(Decided June 15th, 1858.)

---

# MARY ROBINSON, AND OTHERS, vs. THE COUNTY COMMISSIONERS FOR HARFORD COUNTY.

A valuation of a convicted slave was made by the judge on the *same day* of the sentence, and *nine days* thereafter, and during the *same term*, the county commissioners filed a petition asking the judge to correct the valuation, upon the ground that it was erroneously made too high, for reasons stated, and the court passed an order setting the petition down for hearing, with liberty to the owners and the commissioners to take testimony. Under this order affidavits were taken and filed by both parties, and, upon them, the *successor* of the judge who tried the case, two years after the sentence, revised the valuation, and fixed it at a *less sum*. HELD:

That the county commissioners had the right to file the petition, and there was *no error* in the proceeding in reference to the *second valuation*, there being nothing to show that the delay was occasioned more by the fault of the commissioners than of the owners; and the succeeding judge having the same authority over the case as his *predecessor*.

The *amount* of the valuation, under the act of 1809, ch. 138, sec. 21, of a slave convicted of a felony, is a matter within the *discretion* of the court in which the case is tried, and, therefore, is not the subject of an appeal or of revision by the Court of Appeals.

The *owners* of such slave have no right to appeal from any action of the court in reference to the *sentence* of the negro, the State and the negro being the *only* parties who can ask the appellate court to review *such action*.

Robinson, *et al.*, *vs.* Commissioners of Harford County.

The fact that a *rule* of court purports to be set out in one of the *reasons* filed with a motion to dismiss a petition, is not sufficient proof to the appellate court of the *existence* of such a rule.

As a general rule, the judgment of a court of record is, during the entire term at which it is rendered, under the control of the court, and liable to be stricken out, altered, or amended.

APPEAL from the Circuit Court for Harford county.

This appeal was taken by the owners from an order of the court below, (PRICE, J.,) in reference to the *valuation* of a negro slave, *convicted* of a *larceny.* All the proceedings and facts in the case are fully stated in the opinion of this court.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and BARTOL, J.

*Otho Scott* for the appellants:

The questions in this case are not to be settled by precedents. This is the first attempt, that I am aware of, to set aside the valuation of a convicted slave. The act of 1809, ch. 138, sec. 21, requires the court, *immediately* after conviction, to value the slave, and the law makes this valuation conclusive. There is no mode of revision. Whether a judge, if he ascertains his valuation was grossly wrong either way, that is, too high or too low, might not immediately correct it, is not discussed. This is not such a case. Here the application for revision was not made till a month afterwards, nor until the court had risen, and the second valuation was not made until two years after the conviction. If Judge Constable had revised his own valuation, there would have been more of plausibility in it, though it would seem that he would have had no more right to do so than a jury of inquest would have to alter their verdict a month after. But for another judge, two years afterwards, to modify the valuation, and sentence the negro anew, seems to be without precedent or principle. The judge who tries the case has the negro before him, values him from personal inspection and inquiry made at the time. This furnishes a much better opportunity for forming a correct judgment than an inspection after two years' imprisonment. The

law intends the negro to be valued at the time of the sentence, and necessarily by the same judge; it says *immediately*. Suppose a special judge to try, would another judge have, two years after, a right to rescind the sentence and valuation? Judge Constable, by his order of the 2nd of December, did not rescind the sentence. The negro was sentenced on the 23rd of November 1853, and Judge Price set aside the sentence two years after. He had no power to disturb the judgment, and could not make a *valuation immediately thereafter*.

In favor of the first valuation we have the opinion of Judge Constable, the affidavits of Hays, Campbell, Burke, and others. Campbell, who deals in negroes, and knows more of their value than any other witness, says the negro was worth, in his then condition, $750. Dallam, the sheriff, was offered $500; so that it will be seen, by the proof, that the valuation was not too high. A convicted negro is valued as if his morals were good. If it were otherwise, as some of the witnesses evidently suppose, then a murderer, or other atrocious offender, would not be valued at any thing. Convicted negroes are always valued at the "price the traders give for negroes of similar qualities which have not been convicted." But few, if any, of the States allow convicts to be introduced. Hence conviction injures the sale, though it does not affect the valuation. If a negro is to be hung, he is valued as if he were a slave in the market, free from crime. The amount a convict sells for, therefore, is no test of value; it is common for them to sell for less than half what they are valued at. Reference to the affidavits will show that the valuation ought to have been $750; the negro was one of uncommon value. Besides, in this case, the owner lost two years' services, worth, according to the uncontradicted testimony, $100 per year, and this after the negro was convicted.

Again, as every one has notice of what is done in court, if such a proceeding as this could be had, it ought to be done within the time in which, according to the *rule of court*, motions in arrest of judgment, or for new trials, are allowed to be made. The valuation must be made at the time of the sentence, nor can the sentence be long delayed. The negro

might die, escape from jail, and many accidents might happen which would deprive the owner of the value of his negro.  As soon as the slave is found guilty of felony, his master loses him, and is entitled to his value.  He is like property taken for public purposes.  The law requires an immediate valuation, and its whole object would be defeated, if such revisions as that made in this case were allowed.  The motion to dismiss the petition ought to have prevailed; that the overruling of that motion was error; and the new sentence and valuation is erroneous; and it is therefore insisted, on the part of the appellants:

1st. That the judge who passes the sentence must value the slave, and no other judge, at a subsequent period, can alter the valuation.

2nd. That the order of Judge Price was erroneous, because it professes to sentence the negro, when he had been sentenced two years before.

3rd. That the negro could not be valued two years after his conviction and sentence.

4th. That the petition to revise the valuation of the negro was not made in time.

5th. That the petition to revise ought to have been dismissed, for the reasons stated in the appellants' motion to dismiss it.

6th. That the valuation was not so excessive as to justify setting it aside.

7th. That the appellees, not being parties to the suit, had no right to file the petition.

*Henry W. Archer* for the appellees:

The appellants contend that our petition was not filed in time.  Their counsel, in his argument, says it was filed one month after the judgment.  The record, after reciting the judgment, says: "And thereupon" (which, if it means any thing, means immediately after the judgment) the appellees filed their petition.  The order suspending the judgment, was passed on the 2nd of December 1853, so that the petition or motion to suspend must have been filed before that date.  It

was, in fact, filed immediately after the commissioners had notice, and although the court had adjourned, it was only from day to day, and was open on the 2nd of December for the transaction of business. The petition was certainly filed during the term, which is sufficient; for nothing is better settled than that the court has full power over its own judgments during the entire term at which they are passed, and that the term extends to the first day of the next succeeding term. It is the universal practice, on the first day of each term, to call the preceding term, for the purpose of hearing such motions.

But it is said, the time for making such motions is restricted by a *rule of court*. To this we might say, there is no such rule. We have the appellants' statement of what purports to be a rule, but it does not appear authoritatively by the record that there is any such rule of court as they have quoted. There was such a rule of the old county court, but we are not aware that it has been adopted by the circuit court, and nothing short of a distinct, positive, formally adopted rule, can, we think, deprive the court of power over its judgments during the entire term. But ours was not a motion in arrest of judgment, and the rule relied on has no application to it. A motion in arrest of judgment is in the nature of a general demurrer, and is applicable *only to intrinsic defects* apparent upon the face of the record. It is a motion that *no* judgment be entered. *Evans' Practice*, 331. 2 *Tidd's Practice*, 948. But here we admit the regularity and correctness of the whole proceeding up to the judgment, and only asked the suspension and modification of it. The motion was based upon matter *extrinsic*. The allegation of the petition is, that an imposition had been practised upon the court, a *suppressio veri* as to the true condition of the slave, which materially affected his valuation, and we have a judicial decision that the judge was not apprised of his diseased condition; for, upon this ground, the court suspended the judgment and directed a new inquiry, with a view to its modification. The motion to correct such a mistake, is certainly not what is technically called a *motion in arrest*. The act of 1787, ch. 9, sec. 6, provides, that where a judgment shall be set aside for fraud, surprise, or irregularity

in obtaining the same, the court may direct the continuances to be entered. This act contemplates such motions being made not only during the term at which the judgment was entered, but at subsequent terms. And, in the case of *State, use of Sadler, vs. Cox,* 2 *H. & G.,* 379, we find that the judgment was rendered in September 1821, and at April 1825, a motion was made, and prevailed, to strike out the judgment, and, upon appeal, it was not doubted that the court had power to do so. Upon this point we also refer to the case of *Harris vs. Jaffray,* 3 *H. & J.,* 543, where a verdict was rendered for more than was claimed in the *nar,* and judgment was entered for the amount of the verdict. It was held, that at any time during the term, the plaintiff might remit the excess, and the court, on motion, strike out and amend the judgment.

But the appellants insist that the valuation can only be made by the judge before whom the case was tried. By reference to the act of 1809, ch. 138, sec. 21, it will be seen that the power is not given to the *judge,* individually, but to the *court;* the valuation is the act and judgment of the court, whatever judge may happen to occupy the bench. If Judge Constable had died after verdict in this case, or after sentence, and before valuation, would it be contended that his successor was without authority, and that no valuation or payment to the owner could in such case be made? The appellants also contend that too much time elapsed before our motion to reconsider the judgment and valuation was finally acted on. The continuance of the case from term to term, may have been by the appellants' own fault, for aught that appears upon the record. But the motion being filed in time, the subsequent delay is certainly no ground for reversal on appeal.

Nor have the appellants been injured by the delay. They were enabled to present a much stronger case after the negro's feet were healed, and have secured a valuation of $400, whereas $50 is quite as much as he could have been valued at in the first instance, by any judge having full knowledge of his then condition, as shown by the affidavits on the part of the appellees. But it is unnecessary to discuss the question whether the final valuation, from which the appeal was taken, is too high

or too low.   It is the act of the court, to which the authority
is given by the act of Assembly, and cannot be reviewed upon
appeal any more than an allowance of commissions by the
Orphans court, to which the sole power is given of fixing the
per centage.   So a jury may correct and modify their verdict
at any time while it is under their control, and it is frequently
sent back to them for correction, but the *amount* is not an open
question upon appeal.

Again, the appellants contend that the county commissioners
had no right to make their motion, because not parties to the
case.   The same argument would deny to the *appellants* the
right of appeal, for neither are they formal parties to the in-
dictment.   But there is no force in this objection.   The valu-
ation of the slave was in the nature of a judgment against the
commissioners; it bound them to pay a certain sum of money,
and it would be strange if they had not the right, and sufficient
time also, to interpose objection.   And here it may be remarked,
that even if this were technically a motion in arrest of judg-
ment, the rule limiting the time for such motions would only
apply to parties to the verdict.   The trial was between the
State and the negro, but the judgment of valuation concerned
the commissioners and the owners only.

ECCLESTON, J., delivered the opinion of this court.

On the 23rd of November 1853, in the circuit court for
Harford county, George Brown, the slave of the appellants, was
tried upon an indictment for larceny, and found guilty.   The
same day the judge of the court (the Hon. Albert Constable)
passed judgment upon the verdict, directing that the criminal
should be sold as a slave for life, by the sheriff of the county,
to some person who should convey him beyond the limits of
this State; and the judge also valued and appraised the negro,
George Brown, at the sum of six hundred dollars, which it
was adjudged and determined should be assessed and levied
upon the taxable property of Harford county, by the commis-
sioners of said county, to and for the use of the present ap-
pellants; and that if the negro should sell for more than $600,
then the excess thereof should be assessed and levied in addi-

Robinson, *et al.*, *vs.* Commissioners of Harford County.

tion thereto by the said commissioners, to and for the use of his owners aforesaid.

On the 2nd of December following, the commissioners for the county filed a petition, alleging that the valuation of the negro was excessive, and that the same must have been made in consequence of misinformation, or from want of proper knowledge in regard to his diseased and crippled condition, and praying that the judgment of the court might be suspended and reconsidered. With this petition was filed an affidavit of Dr. E. H. Richardson, stating the crippled condition of the negro, and the diseased state of his feet.

The record then proceeds thus: "Whereupon the court here passed the following order, to wit: *Order of court*, December 2nd, 1853. On considering the matter of the within petition, it is ordered, that the sheriff of Harford county suspend the execution of the judgment, and retain the said negro prisoner until the hearing of this application, and the further order of the court; and it is further ordered, that the same stand for hearing on the 4th day of January next, with liberty to the owner or owners of said negro, and the commissioners of the county, to take testimony before any justice of the peace of Harford county, on five days' notice, to be used at the said hearing, and that a copy of this order be served on the owners of the said negro, or their counsel, on or before the 15th instant.                    ALBERT CONSTABLE."

Under this order affidavits were taken and filed on both sides. The counsel for the owners filed a motion to dismiss the petition, assigning various reasons therefor.

On the 29th of November 1855, Judge Price (the successor of Judge Constable) ordered and adjudged that the said negro should be sold to some person who would carry him out of this State, and that the sale should be made by the sheriff of the county. And the order goes on to say: "And the court, upon proof and personal visit and examination of said negro, values said negro, George Brown, at the sum of $400, to be paid to the owners of said negro; and the court further directs, that if said negro produces, on sale, more than $400, that the excess over $400, which said negro may produce on such sale, be

paid to his owners, in addition to said $400. And it is further ordered and adjudged, that so much of the order passed by this court at November term 1853, as is inconsistent with this order, be and the same is hereby rescinded."

The negro was sold, on the 29th of January 1856, for $250; and on the 25th of April following, the counsel for the present appellants filed the following directions for an appeal:

"The owners of negro George, by their counsel, direct the clerk to enter an appeal from the judgment at November term, setting aside former valuation," &c.

If the language used, in directing this appeal to be entered, can be considered as intended to include the action of the court in reference to the sentence, as well as the valuation of the negro, still the proceedings in relation to the *sentence* are not properly before us for revision. The State and the negro were the only parties who could ask this tribunal to review the action of the court below in relation to the sentence. The owners have no such right. When a convicted slave is sentenced, if the court should neglect to ascertain his value, the owners would have the right to apply for a prompt valuation; as the act of 1809, ch. 138, sec. 21, requires the court, immediately after conviction, to value the slave. And should such an application be refused, the owners would be entitled to an appeal. The amount of the valuation, however, is a matter within the discretion of the court in which the case is tried, and, therefore, is not subject to revision by an appellate tribunal.

Conceding, then, that in reference to the valuation of a convicted slave, (except it be as to the amount thereof,) if the court commits an error, the owners may appeal, it becomes necessary to ascertain whether any such error is to be found in the case before us. There certainly was no delay in the first action of the court on this subject. The verdict, the sentence and the valuation all occurred the same day.

The appellants, however, among other grounds of alleged error, insist that the application to have the judgment suspended and reconsidered, was filed too late, and the order of the court passed thereupon was erroneous; and, therefore, the petition of the appellees should have been dismissed upon the

motion of the appellants. The first reason assigned in support of this view, is based upon and sets out an alleged rule of the court in regard to a motion in arrest of judgment, or for a new trial. Now if there was proof of the rule, and the analogy between the application under this petition and either of the motions mentioned in the rule, as stated, was so striking as to render it proper to require that the petition should have been filed within the time limited by the rule, although this might be conceded as true, still it could be of no avail to the appellants. There is no proof in the record of the existence of such a rule. It no where appears except in the first reason assigned by the appellants in support of their motion to dismiss the petition.

It has been long settled, as a general rule, that during the entire term in which a judgment is rendered in a court of record, the judgment is under the control of the court, and liable to be stricken out, altered, or amended, unless such general authority is limited or restricted by some positive rule. There is no *proof* of any such limitation or restriction in regard to the case before us.

We have seen that, on the 23rd of November 1853, the court passed sentence upon the negro, and put the valuation upon him. On the 2nd of the following month, the petition of the appellees was filed. And the act of Assembly regulating the terms of the circuit court for Harford county, shows that the judgment of the court and the filing of the petition were during the same term. The application to obtain a correction of the valuation was, therefore, not too late, as insisted upon by the appellants, but was filed in proper time, nothing to the contrary being proved in the record. Moreover, the order suspending the execution of the judgment, must be understood, according to the language of the record, as having been passed whilst the court was actually in session. The statement in the record is: "Whereupon the court here passed the following order, to wit: *Order of court*, December 2nd, 1853," &c.

The appellants deny that Judge Constable had any authority to revise or reconsider the valuation, or to pass any order for such a purpose, on the 2nd of December 1853; and they say,

admitting *he* then had the authority, still no successor of his, as judge, could in any manner change or modify the first valuation. But we cannot yield our assent to this view of the subject. On the contrary, we think Judge Price could exercise the same authority over the case which would have been possessed by his predecessor, if he had been living, and still in office.

The right of the commissioners to file their petition has been resisted, because they were not "parties to the suit;" meaning, of course, the prosecution against the negro. If this is a good reason why the appellees could not make their application, it must be an equally valid objection to the right of appeal on the part of the owners. They were no more parties to the prosecution than the commissioners. But, inasmuch as the valuation was to be assessed and levied upon the taxable property of the county, by the commissioners, they surely had the right, upon the grounds stated in their petition, to apply to the court for a reconsideration or revision of its valuation.

The record shows that the negro was presented, indicted, arrested, tried, found guilty, sentenced and valued on the 23rd of November 1853. Nine days thereafter, the appellees filed their petition. Under these circumstances, and in the absence of proof of any express rule of court limiting a shorter period of time than nine days for the filing of such an application, the one before us cannot be regarded as coming in too late, or after an unreasonable delay.

The order of the 2nd of December 1853, suspended the execution of the judgment, and directed the sheriff to retain the negro until the hearing of the application, and the further order of the court. We see no good reason why the sentence should have been suspended and the negro retained, instead of being sold. This was not imperatively necessary, for the purpose of revising or reconsidering the valuation. But supposing the court committed an error in thus ordering the sentence to be suspended, it is not such an error as can be revised on this appeal by the owners, as will appear from what has been previously said.

It has been contended that the valuation by Judge Price is

Robinson, *et al.*, *vs.* Commissioners of Harford County.

erroneous, and should be reversed, because it was not made until two years after the sentence, and the act of Assembly required it to be made immediately. It is true the act provides for a prompt valuation, and it is certainly a reasonable and proper provision, one which the court should fully comply with. But surely the Legislature never designed that when the valuation is made in a case like the present, it should be held so final and conclusive as to shut out, entirely, all inquiry as to whether it was correctly or erroneously made. Nor do we suppose the act intended that an application for a reconsideration, in such a case, should not be governed by the general principle or rule which gives to a court of record control over its judgments during the terms in which they are rendered. The appellants complain of the great delay resulting from the order of suspension for revision. It will be seen that order authorized depositions to be taken on both sides. We find nothing in the record, since the date of the order, which shows that the delay spoken of resulted more from the proceedings on the part of the appellees than from those of the appellants. Several of the depositions filed by the former are dated in December 1853, and none later than December of the following year. The first filed by the latter is dated in June 1854, and six or seven are dated the 27th of November 1855, only two days prior to the final order, from which this appeal is taken.

Considering that the application was not made too late; that under the order of the 2nd of December 1853, Judge Price had the same authority to act as Judge Constable had; that the amount of the valuation is not a subject for revision in this court; and that the action of the court in relation to the *sentence* is not before us on this appeal, the order or judgment appealed from will be affirmed; which order, it will be seen, only rescinds so much of the former order, of November 1853, as is inconsistent with the last.

*Order affirmed, with costs to the appellees.*