## SCOTT *v.* STATE

[No. 39, September Term, 1960.]

*Decided November 8, 1960.*

The cause was argued before Brune, C. J., and Henderson, Hammond, Prescott and Horney, JJ.

*George L. Russell, Jr.,* with whom were *Benjamin L. Brown* and *Brown, Allen & Watts* on the brief, for the appellant.

*Lawrence F. Rodowsky, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, Saul A.*

*Harris, State's Attorney for Baltimore City,* and *Charles E. Moylan, Jr., Assistant State's Attorney,* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

In some of its aspects, this is an unusual case. On December 16, 1959, Charles Scott was tried for, and convicted of, statutory burglary, by a judge of the Criminal Court of Baltimore, sitting without a· jury. From a three years' sentence in the Maryland Penitentiary, he has appealed.

The Attorney General has filed a motion to dismiss the appeal, which we shall dispose of first. The appellant was sentenced by the court on January 20, 1960. He then filed a motion to vacate the judgment and set aside the sentence. This motion was denied by the trial judge on February 9, 1960. On February 15th, following, the clerk received from the appellant a "Notice of Appeal." It would serve no present purpose to set forth its contents in detail. As a result of its receipt, the clerk, on February 17th, wrote the appellant and stated:

> "I gather from the contents of your Notice of Appeal received on February 15th, that you wish the Court of Appeals to review your conviction and sentence of three years *imposed on January 20th.* If this is correct, you are within the thirty days allowed by law to do so and, in order to protect your rights, I am making the appropriate entry on the docket." (Emphasis added.)

The clerk, also, called to the appellant's attention that the denial of his motion to vacate the judgment appeared on the docket, and inquired whether he wanted to note an appeal from this denial. The appellant replied that he did.

The State contends that the defendant's first notice of appeal (as well as his reply to the clerk) only applied to his motion to vacate the judgment, and there has, in fact, never been any appeal from the judgment of January 20th. In view of the quoted portion of the clerk's letter, whereby the defendant, who was confined in prison, was informed that· the clerk was

making an appropriate entry on the docket to have the Court of Appeals review his conviction and sentence of January 20th, we think the contention is unsustainable. The motion to dismiss will, therefore, be denied. Cf. *Cahill v. Baltimore City,* 93 Md. 233, 48 A. 705.

At the conclusion of the presentation of the State's evidence at the trial below, the defendant, who was represented by counsel, rested his case. The trial court took a short recess, and, upon his return to the courtroom, rendered a verdict of "guilty generally," and inquired of defendant's attorney if he wished to file a motion for a new trial. The attorney replied, "We request a motion for a new trial," and the court said, "All right."

At this point, the defendant asked if he could address the court. His lawyer stated that although he had advised his client (who had a record of previous convictions) not to do so, the defendant desired to take the stand and deny certain of the testimony presented by the State. The court stated that if the case were a jury trial, "it would not be possible to do this," but if "he has no objection and wants to testify, I believe I could still reopen the case." *"I cannot strike out the verdict."* "I can only hear what he has to say in mitigation of sentence * * *." (Emphasis supplied.) A colloquy between the court, Scott and his attorney followed, during which the court stated: "Frankly, I would like to hear from you [the defendant], too, but it is a bit irregular at this time in view of the fact that you have been convicted and that your counsel has stated that he is going to file a motion for a new trial. The only issue before me under the circumstances would be the nature of the sentence to give you." Further colloquy ensued, and, just before Scott was sworn, the following occurred:

> (Scott), "I feel after I testify you [the court] would have an opportunity to reconsider your finding."
>
> (The court), "I don't know whether it is within my power to do that now since you did not testify before."

(Scott), "I was not given the opportunity. I sure requested it."

(The court), "Right or wrong, I will let you testify. I will take whatever you say under advisement."

Scott was then sworn, and he testified, relative to his guilt or innocence, at some length. Court was, thereafter, adjourned for the day, accompanied by a statement that the case would be resumed on the following morning, December 17, 1959, at 10:00 A.M. During the night, the police officers had obtained another witness for the State, who was permitted to testify, without objection. The testimony of this witness did not relate to the question of prospective punishment of the accused, but bore directly on the question of his guilt. The defendant again took the stand, and, towards the end of his testimony told the court that he had two or three witnesses, who lived in Washington, D. C., and whom he would like the court to hear. The court stated that this "is a most unusual case." "If you want additional time—I want to be sure I make no mistake—my mind is unchanged to this minute—if you want additional time, I will give it to you." "I will direct that this case be held *sub curia* for one week." "The clerk will reset the case at that time." "If you produce your witnesses, I will hear them even then."

The defendant, who had become dissatisfied with his then attorney, requested and was granted permission to engage new counsel.[1]

The case was not reset in a week's time, and it was not until January 20, 1960, that it was resumed. In the meantime, the defendant had been unable to obtain new counsel, although he had written "several organizations to help [him] contact [his] family." The court informed the defendant that he intended to impose sentence. The defendant requested an opportunity to file a motion for a new trial, but he was in-

---

1. We think it only fair to comment that the trial court pointed out to the defendant that his attorney was trying to represent him diligently and faithfully.

formed that his request came too late, as the verdict had been rendered on December 16, 1959.[2]

The record makes it crystal clear that the learned trial judge "leaned over backwards" in his efforts to afford the appellant every opportunity for a full, fair and impartial trial. We think, however, that he fell into error when he stated, on December 16th, that he could not strike out his verdict.[3] There is no doubt that he had discretionary revisory power over his verdict until the expiration of the term of court at which it was rendered. *Seth v. Chamberlaine*, 41 Md. 186, 194; *State v. Butler*, 72 Md. 98, 18 A. 1105; *Madison v. State*, 205 Md. 425, 431, 109 A. 2d 96. Cf. *Jones v. State*, 214 Md. 525, 529, 136 A. 2d 252. And we think it was irregular to resume the taking of testimony as to the defendant's guilt or innocence, without striking out the verdict of "guilty generally." The record clearly shows (and we have recited a part of it above) that the defendant desired to reserve his right to move for a new trial before the Supreme Bench. The simple and proper procedure for the court to have pursued was to have stricken out the verdict (provided it was done during the term), then to have received any further evidence relating to the guilt or innocence of the accused that he, in his discretion, deemed proper, and then to have entered a new verdict consistent with all of the evidence that had been adduced. This would have permitted the trial judge to have received in an orderly manner all of the evidence that he desired, and, at the same time, afforded the defendant an opportunity to file his motion for a new trial.

We think the erroneous belief of the trial judge that he did not have the power to strike out his verdict, coupled with the other irregularities, in practical effect, denied to the appellant

---

2. Rule 502 of the Rules of the Supreme Bench of Baltimore City provides that a motion for a new trial must be filed within three days after verdict.

3. There is authority to the effect that, technically, a "verdict" can only be rendered by a jury, as distinguished from a "decision" by the court. Black's Law Dictionary (3rd Ed.), pp. 1807, 1808. The distinction seems to have little practical significance.

his right to prosecute his motion for a new trial, and this constituted prejudice.

Having reached this conclusion, it becomes unnecessary to consider the other questions raised by the appellant.

*Motion to dismiss appeal denied. Judgment reversed, and case remanded for a new trial.*