701 A.2d 405

**MARYLAND BOARD OF NURSING**

v.

**Nancy NECHAY.**

**No. 112, Sept. Term, 1996.**

Court of Appeals of Maryland.

Oct. 15, 1997.

398

Andrew H. Baida, Asst. Atty. General (J. Joseph Curran, Jr., Atty. General; Nancy P. Tennis, Asst. Atty. General, on brief), Baltimore, for petitioner.

Robert H. Bouse, Jr. (Charles I. Joseph, Anderson, Coe & King, L.L.P., on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI,* RAKER and WILNER, JJ.

BELL, Chief Judge.

The issue that this case presents for our resolution is whether one circuit court judge, acting within thirty days after the entry of an order by another member of that circuit court is empowered by Md.Code (1977, 1995 Replacement Vol.) § 6–408 of the Cts. & Jud. Proc. Article, and Md. Rule 2–535 to revise, alter, or amend that order, notwithstanding that no timely motion to revise has been filed by a party to the action.

This appeal had its genesis in a complaint received by the petitioner, the Maryland Board of Nursing, (hereafter "the Board"), concerning Nancy Nechay, the respondent, a registered nurse whom it licensed [1]. Following an investigation, the Board charged the respondent with filing "a false report or record of an individual under [the respondent's] care," and committing an "act that is inconsistent with generally accepted professional standards in the practice of registered nursing." [2]

---

* Karwacki, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the adoption of this opinion.

1. Md.Code (1981, 1994 Repl.Vol.1997 Cum.Supp.) Title 8 of the Health Occupations Article provides, *inter alia,* for the creation and duties of the State Board of Nursing, the State regulatory agency, § 8–201, *et seq.,* and the licensing of registered nurses. § 8–301*et seq.* Unless otherwise indicated, all future references will be to that Act.

2. Section 8–316(a) provides, in pertinent part, that "[s]ubject to the hearing provisions of § 8–317, the Board may ... reprimand any

Rather than taking the charges to a hearing, the parties agreed to a Consent Order [3], in which the respondent admitted the § 8–316(a)(8) violation [4] and the Board dismissed the § 8–316(a)(5) violation. The order was incorporated into the Board's Findings of Fact Conclusions of Law and Order. After reciting the facts necessary to sustain the admission and setting forth its conclusions of law, the Board "ORDERED that the license of Nancy Nechay an individual licensed to practice REGISTERED NURSING is hereby REPRIMAND-ED."

A reprimand is one of the final orders that, pursuant to § 8–316(b),[5] the Board is authorized to issue. Such orders are

---

licensee ... or suspend or revoke the license of a licensee if the ... licensee:

\* \* \*

(5) Willfully and knowingly
(i) files a false report or record of an individual under the licensee's care;

\* \* \*

(8) Does an act that is inconsistent with generally accepted professional standards in the practice of registered nursing or licensed practical nursing...."

3. The respondent consented to the Order by executing a form of consent which appeared immediately after the Order:

CONSENT

By this Consent, I hereby admit the truth of the Findings of Fact, and accept and submit to the foregoing Order. I acknowledge the validity of the Order as if made after a hearing in which I would have had the right to counsel, to confront witnesses, to give testimony, to call witnesses on my own behalf and to all other substantive and procedural protections provided by law. I also recognize that I waive all such rights.

I sign this Order after having the opportunity to consult with an attorney, without reservation, and I fully understand its meaning.

4. The findings of fact described the conduct in which the respondent engaged as occurring when she worked in the cardiac surgery unit at St. Joseph's Hospital and involving her failure to assess a patient for breath sounds in an appropriate manner and falsely recording the time at which she assessed a patient's productive cough and an admission that she did not have sufficient clinical background successfully to work in the cardiac surgery unit.

5. That section provides:

public records as defined by Md.Code (1957, 1995 Repl.Vol., 1995 Cum.Supp.) § 10–611(f)(1) [6] of the State Govt. Article which, as prescribed by § 10–617(h)(2)(vi), may be disclosed.[7] Those orders are published, as is the Board's standard practice, in the *Communicator*, the Board's newsletter [8]. Aware of the practice and her request that the Board not publish her reprimand in the *Communicator* having been rejected on the grounds that a reprimand is a public document, that it was an appropriate sanction for the case, and that withholding publication would set an inappropriate precedent, the respondent filed, in the Circuit Court for Baltimore City, a Complaint for

---

(b) If, after a hearing under § 8–317 of this subtitle, the Board finds that there are grounds under subsection (a) of this section to suspend or revoke a license to practice registered nursing or licensed practical nursing, to reprimand a licensee, or place a licensee on probation, the Board may impose a penalty not exceeding $5,000 instead of or in addition to suspending or revoking the license, reprimanding the licensee, or placing the licensee on probation.

6. (f)(1) "Public record" means the original or any copy of any documentary material that:

(i) is made by a unit or instrumentality of the State government or of a political subdivision or received by the unit or instrumentality in connection with the transaction of public business; and

(ii) is in any form, including:
1. a card;
2. a computerized record;
3. correspondence;
4. a drawing;
5. film or microfilm;
6. a form;
7. a map;
8. a photograph or photostat;
9. a recording; or
10. a tape.

7. Under § 10–617(h)(2)(vi), "[a] custodian shall permit inspection of the part of a public record that gives . . . any orders and findings that result from formal disciplinary actions."

8. Pursuant to § 8–316(d), revocations and suspensions are required to be treated somewhat differently. That section provides:

(d) The Board shall file a notice for publication in the earliest publication of the Maryland Register of each revocation or suspension of a license under this section within 24 hours of the revocation or suspension.

Injunctive Relief, asking that court to pass "An order that the Maryland Board of Nursing must not publish the order of reprimand regarding the actions of Nancy Nechay on August 3, 1991 and August 17, 1991." She also filed a Motion for Ex Parte Injunction seeking immediate injunctive relief in order to maintain the *status quo* until a hearing on the merits could be had. The Board responded by filing a Motion to Dismiss or, in the alternative, for Summary Judgment, to which the respondent filed an answer challenging the Board's entitlement to both dismissal of the complaint and summary judgment.

A hearing, at which arguments were presented, was conducted by the motions judge, the Hon. Thomas Ward. He subsequently entered an order denying the Board's motion for summary judgment and prohibiting it from publishing the reprimand. More specifically, the order provided:

1. The Maryland Board of Nursing is charged with notice of Maryland Code Ann. Health Occ. § 8–316 and Maryland Code Ann. State Government § 10–617.

2. Pursuant to Maryland Code Ann. Health Occ. § 8–316(d) and Maryland Code Ann. State Government § 10–617(h)(2)(vi) the Maryland Board of Nursing is prohibited from publishing the findings of reprimand against Nancy Nechay signed on November 28, 1994.

3. The publication of the finding of reprimand against Nancy Nechay signed on November 28, 1994 would be an invasion of her right to privacy as there is no public interest in the publication of the order of reprimand.

4. The statutes are clear and unambiguous and speak only to the publication of revocation and suspension of licenses where there is a public interest in knowing the names of those who are unable to practice in their profession.

After the hearing on the Board's motion had been scheduled, but before it had actually occurred, the respondent had filed an Amended Complaint For Interlocutory Relief. Its effort to realize an early victory having failed, the Board answered the amended complaint. Thereafter, within 30 days

of the entry of Judge Ward's order, as instructed by a scheduling notice issued by the City Clerk's office, the parties appeared before another judge of the Circuit Court for Baltimore City, this time the Hon. Mabel Houze Hubbard. According to the scheduling notice, the case was "Scheduled for Motion Hearing—Fast Track (Categories B, D—INT INJNCTN[ ] ]." [9] Judge Hubbard's opening comments put into perspective what was to occur at that hearing and why:

As I understand it Mr. Bouse, you believed the case was over, that it had been decided by Judge Ward based on his May 3rd, 1995 order, after he says he considered the Defendant's Motion to Dismiss or any alternative Motion for Summary Judgment, the Plaintiff's response and arguments that he heard on April 27th, 1995. The original complaint, docketed to be heard on the merits in the Circuit Court for Baltimore City for June 6, 1995 was not removed from the docket.

Based on all of that information says Judge Ward in his order, he denied the Defendant's motions, that is that Motion to Dismiss, or in the alternative, the Motion for Summary Judgment. And he made further orders, and his further orders include a prohibition to the Maryland Board of Nursing for publishing the findings of a reprimand against Ms. Nechay, that reprimand having been signed on November 28th, 1994.

Judge Ward indicated further that the publication of the finding of reprimand would be an invasion of Ms. Nechay's right to privacy as there's no public interest in the publication of the order of reprimand. And finally, Judge Ward found and says in his order that the statutes are clear, and unambiguous and speak only to the publication of revocation and suspension of licenses where there's a public interest in knowing the names of those who are unable to practice in their profession.

---

9. There were two scheduling notices, one printed May 2, 1995 and the other printed May 23, 1995. Only the first notice contained the notation "INT INJNCTN."

Kind of an unusual order, but it clearly is his opinion as stated. The Court is eager to hear from both sides as to whether or not Judge Ward's order is a final decision as to the merits of this case.

After a vigorous argument as to the finality of the order, Judge Hubbard inclined toward the view espoused by the Board, ruling that she was not convinced that it was "a complete and final order as to permanent injunction." She also observed that "Judge Ward had before him a Motion for Summary Judgment which he denied. And that means to me that the matter should go on for the trier of fact, if you please, to make a determination."

Judge Hubbard conducted a full trial on the merits. At the conclusion of that trial, she found as a fact that there are no Maryland code provisions which preclude or prohibit the Board's practice of publishing reprimands. That being so, Judge Hubbard denied the respondent's prayer for an injunction.

The Respondent successfully appealed to the Court of Special Appeals. In an unreported opinion, a majority of the panel held that Judge Ward entered a final judgment which terminated the dispute between the parties and that, by finding that order interlocutory and conducting a hearing on the merits, Judge Hubbard erred. As to the latter point, the majority explained:

Importantly, the circuit court, in conducting such further proceedings, was not sua sponte acting in a capacity to revise or modify the May 3, 1995 order. Indeed, the Board never sought to have the order revised, nor did the Board object to the order's terms or scope. Thus, the circuit court proceeded on the mistaken ground that more was necessary to be determined in the case. In other words, the events following the May 3, 1995 order were not proceedings for the purpose of revising that order, but were proceedings conducted on a mistaken belief that the issue of permanent injunctive relief remained undecided.

Accordingly, the intermediate appellate court did not reach the issue that we granted certiorari to consider, whether Judge Hubbard was authorized to revise the judgment entered by Judge Ward.

 The issue in this case is the "jurisdiction" of the circuit court, in the person of Judge Hubbard, to enter a judgment denying the relief requested by Nechay. Our cases make clear that, because its meaning depends upon the context and circumstances in which it is used, the word "jurisdiction" is equivocal. *Moore v. McAllister,* 216 Md. 497, 507, 141 A.2d 176, 182 (1958). Indeed, we long have recognized that "Juridically, jurisdiction refers to two quite distinct concepts: (i) the power of a court to render a valid decree, and (ii) the propriety of granting the relief sought." *Id.* (Citing 1 Pomeroy, Equity Jurisprudence (5th ed.1941), §§ 129–31); *First Federated Commodity Trust Corp. v. Commissioner of Securities for Maryland,* 272 Md. 329, 334, 322 A.2d 539, 543 (1974). *See Kaouris v. Kaouris,* 324 Md. 687, 708, 598 A.2d 1193, 1203 (1991). The former concept involves jurisdiction in its fundamental sense. *McAllister,* 216 Md. at 507, 141 A.2d at 182. We explicated the concept in *Kaouris,* 324 Md. at 708–09, 598 A.2d at 1203, as follows:

> Whether a court has fundamental jurisdiction, i.e., the power, to decide a matter, must be determined by looking to "the applicable constitutional and statutory pronouncements," *First Federated Com. Tr.,* 272 Md. at 335, 322 A.2d at 543, because fundamental jurisdiction involves the power, or authority, of a court to render a valid final judgment. *Stewart v. State,* 287 Md. 524, 526, 413 A.2d 1337, 1338 (1980). It is a court's "power to act with regard to a subject matter ... 'conferred by the sovereign authority which organizes the court, and is to be sought for in the general nature of its powers, or in authorities specially conferred.'" *Pulley v. State,* 287 Md. 406, 416, 412 A.2d 1244, 1249 (1980), quoting *Cooper v. Reynolds' Lessee,* 77 U.S. (10 Wall), 308, 316, 19 L.Ed. 931 (1870). *See First Federated Com. Tr.,* 272 Md. at 335, 322 A.2d at 543 ("If by that law which defines the authority of the court, a judicial body is given

the power to render a judgment over that class of cases within which a particular one falls, then its action cannot be assailed for want of subject matter jurisdiction."); *Medical Examiners v. Steward,* 207 Md. 108, 111, 113 A.2d 426, 427 (1955) (Fundamental jurisdiction exists when the court has jurisdiction over the subject matter and the parties.); *Moore v. McAllister,* 216 Md. at 507–08, 141 A.2d at 182 ("[J]urisdiction over the person and the subject matter goes to the very basic *power* of the equity court." (Emphasis in the original)).

"On the other hand, the question of whether it was appropriate to grant the relief merges into the final decree and cannot thereafter be successfully assailed for that reason once enrolled." *First Federated Com. Tr.,* 272 Md. at 334, 322 A.2d at 543 (citing *Steinpreis v. Leet,* 240 Md. 212, 213 A.2d 555 (1965)).

Thus, "[i]t is only when the court lacks the power to render a decree, for example because the parties are not before the court, as being improperly served with process, or because the court is without authority to pass upon the subject matter involved in the dispute, that its decree is void." *Id. See also Stewart,* 287 Md. at 526, 413 A.2d at 1338; *McAllister,* 216 Md. at 509–10, 141 A.2d at 183; *Fooks' Executors v. Ghingher,* 172 Md. 612, 619, 192 A. 782, 785–786, *cert. denied, sub nom.,* 302 U.S. 726, 58 S.Ct. 47, 82 L.Ed. 561 (1937). Moreover, "[t]here is a wide distinction between the lack of jurisdiction to decide a given case, and the improper or irregular exercise of a power which, while within the general jurisdiction of the court, under its established practice, is not applicable to the facts in respect to which it is exerted." *Ghingher,* 172 Md. at 624, 192 A. at 787. Once a court acquires fundamental jurisdiction of a case, any judgment that it renders in that case "is not invalidated because of an [alleged] improper exercise of that jurisdiction." *Parks v. State,* 287 Md. 11, 19, 410 A.2d 597, 602 (1980). Rather than rendering the judgment void, such exercise merely renders it voidable. *Brown v. Baer,* 291 Md. 377, 387, 435 A.2d 96, 101

(1981); *Block v. State,* 286 Md. 266, 273–74, 407 A.2d 320, 324 (1979); *Ghingher,* 172 Md. at 623, 192 A. at 787.

No issue is presented by either party as to the jurisdiction of the circuit court over the parties; indeed, none could have been raised on that score. The respondent's contention is that the court, acting through Judge Hubbard, did not have jurisdiction over the subject matter. The Board, noting that the second circuit court order, the one issued by Judge Hubbard, and which denied the respondent injunctive relief, occurred within thirty days of the circuit court order, granting it, the one issued by Judge Ward, counters with the argument that the court's, and so Judge Hubbard's jurisdiction derives, without question, from § 6–408 and Rule 2–535. In that regard, it argues, "[u]nder the plain language of . . . § 6–408 and Maryland Rule 2–535(a), Judge Hubbard had full 'revisory power and control over the judgment' and complete authority to act as she did."

■ Section 6–408 provides:

For a period of 30 days after the entry of a judgment, or thereafter pursuant to motion filed within that period, the court has revisory power and control over the judgment. After the expiration of that period the court has revisory power and control over the judgment only in case of fraud, mistake, irregularity, or failure of an employee of the court or of the clerk's office to perform a duty required by statute or rule.

Addressing the same subject and along the same lines, Rule 2–535(a) states:

(a) Generally.—On motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment and, if the action was tried before the court, may take any action that it could have taken under Rule 2–534.

The first sentence of the statute and § (a) of the Rule differ in that the Rule may be read as conditioning the court's exercise of its revisory power during the 30 day period on the filing of a motion for that purpose by a party, while the statute is silent

on that point. The respondent relies on that difference in arguing that, since neither party filed a motion to revise or modify the first circuit court order, Judge Hubbard was not authorized to issue the second. That is not, however, the thrust of our cases on this subject nor the intent of the Court in promulgating the Rule.

The Committee note to Rule 2–535 states clearly that "This section is intended to be as comprehensive as Code, Courts Article § 6–408." This suggests strongly that when the Court adopted the Rule, it did not intend that the rule supercede the statute or even contradict it; rather, it intended that they be read together, complementing or supplementing each other. This is consistent with the teachings of our cases with respect to the power of circuit courts to revise or modify their judgments. In that regard, it is well settled in this State that, "Read together, the rules, the statute and our decisions boil down to a dictate that for a period of thirty days from the entry of a law or equity judgment a circuit court shall have 'unrestricted discretion' to revise it." *Platt v. Platt,* 302 Md. 9, 13, 485 A.2d 250, 252 (1984)(quoting *Maryland Lumber v. Savoy Construction Co.,* 286 Md. 98, 102, 405 A.2d 741, 743 (1979)). We recently reiterated the point in *Tandra S. v. Tyrone W.,* 336 Md. 303, 313, 648 A.2d 439, 444 (1994). Moreover, in *Eshelman Motors v. Scheftel,* 231 Md. 300, 301, 189 A.2d 818, 819 (1963), we stated that the discretion reposed in the trial court "is a discretion which must be exercised liberally, lest technicality triumph over justice." To the same effect is *Haskell v. Carey,* 294 Md. 550, 558, 451 A.2d 658, 663 (1982). *See Henley v. Prince George's County,* 305 Md. 320, 328, 503 A.2d 1333, 1337 (1986), in which this Court stated, quoting *J.B. Corporation v. Fowler,* 258 Md. 432, 434–36, 265 A.2d 876, 877–78 (1970), in turn quoting *Clarke Baridon v. Union Asbestos & Rubber Co.,* 218 Md. 480, 483, 147 A.2d 221, 222–23 (1958), whether the court entertained a reasonable doubt that justice had not been done is an appropriate basis for the exercise of that discretion. *See also Int'l–Industrial Developers, Ltd. v. Berg,* 269 Md. 250, 251, 305 A.2d 121, 122 (1973).

The exercise of the court's discretion is not triggered exclusively, our cases make clear, by a motion filed by one of the parties. The court may act to revise its judgment *sua sponte. Yarema v. Exxon*, 305 Md. 219, 241, 503 A.2d 239, 250 (1986*); Scott v. State*, 223 Md. 376, 381, 164 A.2d 716 (1960). *See also Goins v. State*, 293 Md. 97, 111, 442 A.2d 550, 557(1982). In *Yarema*, acting pursuant to a motion filed within 30 days after entry of the judgment, the court modified the judgment and one of the parties appealed, filing the notice within 30 days of the modification, but more than 30 days of the original judgment. We held that the appeal was timely, reasoning that "when a motion under Rule 2–535(a) to revise a final judgment is filed within thirty days and the circuit court in fact revises the judgment, and there has been no intervening order of appeal, the prior judgment loses its finality and the revised judgment becomes the effective final judgment in the case." *Id.* at 241, 503 A.2d at 250. We went on to say that, as the court can act *sua sponte* to revise a judgment under Rule 2–535, the same result obtains when the circuit court *sua sponte* revises the judgment within thirty days. *Id* at 241, 503 A.2d 239. In so concluding, the Court pointed out that the court's power to revise a judgment within the time prescribed by the rules is "inherent." *Id.*, citing *Ayre v. State*, 291 Md. 155, 160, 433 A.2d 1150, 1153 (1981); *Owen v. Freeman*, 279 Md. 241, 245–46, 367 A.2d 1245, 1247–48 (1977).

We made very clear in *Scott*, that a trial judge has discretionary control over his or her decision during the term in which it is rendered. Thus, the Court reversed a trial court's judgment when it became apparent that the court's erroneous belief that it could not revise its decision, coupled with other irregularities, resulted in the denial of the defendant's ability to prosecute his motion for new trial. 223 Md. at 381, 164 A.2d. at 719.

Although it involved the 180 day rule and the interplay between Maryland Code (1957, 1992 Repl.Vol.)Article 27, § 591 and former Maryland Rule 746, *Goins* is instructive, as it provides the rationale for why, in a case such as the one *sub judice,* a mere reference in the rule to "motion" can not

deprive the court of the power to act *sua sponte.* 293 Md. at 111, 442 A.2d. at 557. In that case, this Court granted certiorari to determine if, applying § 591 and Rule 746,[10] there had been an impermissible delay in bringing the defendant to trial. Section 591 required simply that the date within the 180–day limit for trying a criminal case "shall not be postponed except for good cause shown by the moving party." Rule 746, like Rule 2–535, was worded differently, providing that the postponement may be granted upon "motion of a party." *Goins* argued that neither the statute nor the Rule was complied with since there was no motion for postponement as they both required. This Court rejected that argument and instead opined:

"Except as limited by statute or rule, a trial court has inherent authority to control its own docket. A rule authorizing a litigant to file a procedural motion for this purpose

**10.** Maryland Code (1957, 1982 Repl.Vol.) Article 27, § 591 provided:

(a) Within two weeks after the arraignment of a person accused of a criminal offense, or within two weeks after the filing of an appearance of counsel or the appointment of counsel for an accused in any criminal matter, whichever shall occur first, a judge or other designated official of the Circuit Court of the criminal court of Baltimore City in which the matter is pending shall set a date for the trial of the case, which date shall be not later than 180 days from the date of the arraignment of the person accused or the appearance or the appointment of counsel for the accused, whichever occurs first. The date established for the trial of the matter shall not be postponed except for good cause shown by the moving party and only with the permission of the administrative judge of the court where the matter is pending.

(b) The judges of the Court of Appeals of Maryland are authorized to establish additional rules of practice and procedure for the implementation of this section in the criminal court of Baltimore City and in the various circuit courts throughout the State of Maryland.

Maryland Rule 746, present Rule 4–576, provided:

a. General Provision.

Within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 723, a trial date shall be set which shall be not later than 180 days after the appearance or waiver of counsel or after the appearance of defendant before the court pursuant to Rule 723.

b. Change of Trial Date.

Upon motion of a party made in writing or in open court and for good cause shown, the county administrative judge or a judge designated by him may grant a change of trial date.

in one respect or another should not be construed to prohibit the court from accomplishing the same object sua sponte unless such construction is compelled by clear language." *Id.* Stated differently, that a negative inference may be drawn from the Rule and statute does not suffice to preclude the court from acting *sua sponte.* *Link v. Wabash Railroad Company,* 370 U.S. 626, 630, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962). This rationale applies, if anything, more forcefully to the interplay between § 6–408 and Rule 2–535(a).

Before the Court of Special Appeals, the respondent argued that "since the circuit court granted total relief by its May 3, 1995 order [the order issued by Judge Ward], there was nothing more for the circuit court to do and, therefore, this Court was the appropriate forum for 'overruling' the May 3, 1995 order." The intermediate appellate court agreed with that position. Thus, as we have seen, it held that Judge Ward's order was a final order, which adjudicated all of the issues between the parties and that Judge Hubbard erred in determining that further proceedings were necessary. Furthermore, it opined, "the circuit court, in conducting such further proceedings, was not *sua sponte* acting in a capacity to revise or modify the May 3, 1995 order," rather, it, in the person of Judge Hubbard, proceeded on the mistaken premise that permanent injunctive relief remained an issue.

By so holding, the Court of Special Appeals failed to recognize and thus give effect to the jurisdiction conferred on the circuit court by § 6–408 and Rule 2–535(a). The court's jurisdiction exists, or not, by virtue of those provisions, not by whether the judge exercising it does so for the right or wrong reason; it is not dependent on the basis that a particular judge might give for its exercise. Inasmuch as the statute and the rule gives the court broad discretion to revise its judgment for 30 days, Judge Hubbard was fully authorized to do what she did—she acted within 30 days of the entry of the Judge Ward order. And, whether intended as a modification or revision, or not, when that action results in the change of a prior order, it supercedes that order and, therefore, it does

not matter on what theory that change occurred, so long as jurisdiction resided in the court effecting the change. *See Yarema,* 305 Md. at 240–41, 503 A.2d at 250. Nor does the fact that the order was a final order affect the result. Though the order may have disposed of all issues between the parties, leaving nothing more for the circuit court to do, it still remained subject to that court's broad discretion to revise for 30 days. Again, the revision of the order occurred within the revisory period, albeit by a judge other than the judge who entered it.[11]

*Robinson v. Harford County Commissioners,* 12 Md. 132 (1858) speaks to the power of a second judge to rule on a decree of a previous judge of the same court. It is a slave valuation case. On November 23, 1853, in the Circuit Court for Harford County, George Brown, the slave, was tried and found guilty of larceny. Judge Constable directed that George Brown should be sold as a slave for life, by the sheriff of the county, to some person that would remove him from the state. Judge Constable then valued George Brown at $600. On December 2, 1853, the commissioners filed a petition, asking the court to suspend and reconsider the judgment. They argued that Brown's valuation was excessive, and, noting that Brown was diseased and crippled, that Judge Constable must have acted on the basis of misinformation. Judge Constable granted the petition, and Brown was imprisoned until the court could re-value him. On November 29, 1855,[12] a

---

11. The respondent asserts that "the clerk's docketing of Judge Ward's final order divested Judge Hubbard of jurisdiction over the case." She relies on *Carroll v. Housing Opportunities Comm'n,* 306 Md. 515, 520, 510 A.2d 540, 542 (1986). All that case stands for is that a final judgment terminates the action in the court in which it is entered; it does not even suggest that a docket entry, which, by the way, is not held out as divesting every judge on the court of jurisdiction—the respondent pointedly acknowledges that Judge Ward could have revised the judgment—may divest a judge of jurisdiction even before the expiration of the revisory period.

12. The order of December 2, 1853, suspended the execution of the judgment. Therefore, the decision of Judge Price was valid, as it did not run afoul of any statutory time limitations on enrolled judgments.

different judge, Judge Price ordered that Brown be sold, and
the order went on to say:

> "[T]he court, upon proof and personal visit and examination
> of said negro, values said negro, George Brown, at the sum
> of $400, to be paid to the owners of said negro, and the
> court further directs, that if said negro produces, on sale,
> more than $400, that the excess over $400, which said negro
> may produce on such sale, be paid to his owners, in addition
> to said $400."

12 Md. at 139. Appellees argued that not even Judge Consta-
ble had the authority to revise or reconsider the valuation, or
to pass any order for such a purpose, on December 2, 1853,
but that, admitting Judge Constable had the authority, his
successor could not in any manner change or modify the first
valuation. This Court rejected the first argument, stating, "It
has been long settled, as a general rule, that during the entire
term in which a judgment is rendered in a court of record, the
judgment is under the control of the court, and liable to be
stricken out, altered, or amended, unless such general authori-
ty is limited or restricted by some positive rule." *Id.* at 141.
We found no such limitation or restriction in that case. As to
the argument that only Judge Constable had the authority to
change the valuation, this Court held, "On the contrary, we
think Judge Price could exercise the same authority over the
case which would have been possessed by his predecessor,
[even] if he [Constable] had been living, and still in office."
*Id.* at 142. As *Robinson* demonstrates, jurisdiction is con-
ferred upon the court, and not the individual judge. There-
fore, as we have held, Judge Hubbard could revise, alter, or
amend the unenrolled judgment of Judge Ward within thirty
days, just as Judge Ward could have done during the period.

Having determined that the circuit court was empowered to
render a valid judgment in the proceedings before Judge
Hubbard, it follows that the judgment actually entered in that
case may not be reversed for lack of power to enter it, only
because the court abused its discretion in doing so. As we
have seen, the question of whether a court should have
entertained a proceeding or granted the relief sought merges

into the judgment and once enrolled may not be attacked successfully. *First Federated Com. Tr.*, 272 Md. at 334, 322 A.2d at 543. Although she states that the order passed by Judge Hubbard complied with neither prong of the jurisdictional components, except for arguing that Judge Hubbard did not act to revise the prior judgment, the respondent does not profess to address the propriety of that ruling. Accordingly, we will not further consider that question.[13]

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT.

---

**13.** The respondent raises the specter of a legal free for all if we affirm the judgment entered by Judge Hubbard. When, as here, two orders have been entered on the same subject by two different judges, it is the second prong of the jurisdictional components that provides the answer to any such free for all. Whether the second judge abused his or her discretion in acting in the proceedings and in rendering the relief sought is the appropriate inquiry, and that inquiry will ensure that in the few times when situations such as presented here occur, they will be handled properly.