Circuit Court for Prince George's County

Case No. CAE-15-19452

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2419

September Term, 2016

_____

JING MIAO MISEVETH

v.

JEANNE AELION, ET AL.

_____

Wright,
Graeff,
Nazarian,

JJ.

_____

Opinion by Wright, J.

_____

Filed: December 21, 2017

In 2015, Jing Miao Miseveth, appellant, filed, in the Circuit Court for Prince George's County, a petition for guardianship of the person and property for her husband, Theodore Miseveth. The circuit court ultimately granted appellant's request to be guardian of the person; however, the court ordered that a third-party, Jeanne Aelion, appellee, be guardian of the property. In 2016, Aelion was appointed by the Department of Veterans Affairs (the "VA") to be the fiduciary of Mr. Miseveth's VA benefits (hereinafter "Representative Payee"). Not long after, appellant submitted an application to the VA requesting that she be named Representative Payee. That application was granted. Aelion thereafter filed a petition in the circuit court regarding, among other things, appellant's appointment as Representative Payee. Following a hearing, the court ordered that appellant reinstate Aelion as Representative Payee or, in the alternative, that appellant submit a portion of Mr. Miseveth's VA benefits to Aelion every month. Appellant then filed a motion for reconsideration, which the court denied.

In this appeal, appellant presents the following question for our review:

Pursuant to 38 U.S.C. § 511(a) and the interpreting case law, did the Circuit Court lack subject matter jurisdiction to pass any order addressing the appointment of the fiduciary for or the distribution of Mr. Miseveth's Department of Veterans Affairs disability benefits?

For reasons to follow, we answer appellant's question in the affirmative. Because, however, the circuit court's judgment contains various other provisions not challenged in the instant appeal, we reverse only that part of the judgment concerning Mr. Miseveth's VA benefits.

1

## BACKGROUND

Mr. Miseveth, a veteran, suffered a stroke in May of 2015 that left him disabled. Not long after, appellant, Mr. Miseveth's wife of approximately four years, filed a petition seeking to become guardian of her husband's person and property. The circuit court held a hearing on that petition in November of 2015 and ultimately granted appellant's request to be guardian of Mr. Miseveth's person. Appellant's request to be guardian of the property, on the other hand, was denied. In so doing, the court expressed concerns about appellant's accounting practices and management of Mr. Miseveth's funds. As such, a court-appointed attorney, Aelion, was named as guardian of Mr. Miseveth's property.

In or about March of 2016, Aelion, as part of her duties as guardian of Mr. Miseveth's property, was named by the VA as Representative Payee of Mr. Miseveth's VA benefits, which equaled $3,068.90 per month. As part of that appointment, the VA issued a Fiduciary Agreement that itemized Mr. Miseveth's monthly expenses and how his VA benefits would be used to pay those expenses. Included in that itemization were expenses for auto insurance; utilities, mortgage, and insurance on a primary residence; utilities and insurance on real property owned by Mr. Miseveth; utilities and insurance on another piece of real property owned by Mr. Miseveth; and, a $1,000.00 monthly stipend for appellant. The total for those expenses was $2,976.89, all of which was covered by Mr. Miseveth's VA benefits.

Around the same time that Aelion submitted her application, appellant also submitted an application to the VA to become Representative Payee, but the VA denied

2

that application and instead named Aelion. Several months later, appellant, unbeknownst to Aelion, again applied to become Representative Payee. The VA ultimately granted that application and named appellant as Representative Payee. As part of that appointment, the VA issued a notice to Mr. Miseveth and Aelion informing them of the new appointment. The VA also created a new list of Mr. Miseveth's expenses and how his VA benefits would be used to pay those expenses. That list of expenses, which differed significantly from the list that had been issued following Aelion's appointment, included expenses for auto insurance; utilities and insurance on a primary residence; a "cleaning service" for the residence; appellant's prescriptions; "lawn care"; "groceries"; and "special foods" for Mr. Miseveth. The total for those expenses was $2,724.35.

In October of 2016, Aelion filed a petition in the circuit court regarding appellant's appointment as Representative Payee. Specifically, Aelion argued that, as guardian of the property, she had insufficient funds to cover Mr. Miseveth's expenses because appellant, as Representative Payee, was using some of Mr. Miseveth's VA benefits for "questionable" expenses. Aelion asked the court to settle the matter at a hearing on October 24, 2016, which the court had previously scheduled to address other issues.

At that hearing, the circuit court heard evidence regarding appellant's appointment as Representative Payee and her use of Mr. Miseveth's benefits. Based on that evidence, which is not in dispute, the court found as follows:

> It's noted that after the Court appointed the guardian of the property, that [Aelion] became the representative payee, that at some point [appellant] had that changed and she became the representative payee. And

3

it really – it appears that the guardian of the property was not opposed to that, if she were paying his bills. Because he has a significant number of bills, which relate – he has the property next door that he owns, utilities for that property, and other items.

[Appellant] has indicated that she's paying some of the bills, but not all of them. And that being said is the concern, because the guardian of the property's duty and obligation is to safeguard his assets and funds.

So if [appellant] has his veteran's check, but she's not paying all of the bills that are attributable to him, that's not safeguarding his assets and funds, and it's putting the guardian of the property in a position where she can't pay it. I know she still gets a small Social Security check, but that's about 500 and something and the VA check is about $3,000.

So my ruling is as follows: That the guardian of the property is to be appointed the representative payee. I know sometimes it's difficult for the Veteran's Affairs to do what – they do often what they want to do. In the alternative, [appellant] is to transfer all funds, with the exception of $1,000, to the guardianship account each month.

Because the previous order recognized that [Mr. Miseveth] took care of his wife financially, and so that's why we had – we've gone over everything she needed and we set out $1,000 and that $1,000 was just for her and the guardian of the property was paying the bills.

But based on where the Court is, that appears to be the best way to continue. That she continue to get her $1,000, but any funds that she receives in excess of that, she must put in the guardianship account for the guardian of the property to pay [Mr. Miseveth's] bills and financial obligation, because that's the whole purpose of the guardian of the property's duties and obligations.

Following its ruling, the circuit court entered judgment regarding multiple issues addressed at the hearing on October 24. The only portion of that judgment germane to Mr. Miseveth's VA benefits was the following order:

ORDERED, that [appellant] is hereby directed to reinstate Jeanne Aelion as the representative payee for [Mr. Miseveth's] Department of Veterans Affairs income. That until such time, upon receipt of [Mr. Miseveth's] monthly VA benefits, [appellant] shall submit to Jeanne

4

Aelion, guardian of the property, all monies received except One Thousand Dollars ($1,000.00) which amount is hereby permitted to assist [appellant] with her personal expenses. The remaining funds shall be used by the guardian to safeguard [Mr. Miseveth's] interest by ensuring that expenses associated with and/or in the name of [Mr. Miseveth] are paid[.]

Appellant thereafter filed a motion for reconsideration, which the circuit court denied. This timely appeal followed.

## STANDARD OF REVIEW

"The issue of subject matter jurisdiction need not be raised by any party, but may be raised by a court, sua sponte, at any time." *Lewis v. Murshid*, 147 Md. App. 199, 202-03 (2002). "Jurisdiction of the subject-matter means not simply the particular case to which the attention of the court is directed, but the class of cases to which it belongs, and over which the authority of the court extends." *Della Ratta v. Dyas*, 183 Md. App. 344, 355 (2008) (citations and quotations omitted). "Whether a court has fundamental jurisdiction, i.e., the power, to decide a matter, must be determined by looking to 'the applicable constitutional and statutory pronouncements[.]'" *Maryland Bd. of Nursing v. Nechay*, 347 Md. 396, 405 (1997) (citation omitted). And, while there exists a general presumption that agency actions are reviewable, "this presumption can be overcome by 'specific language' that is 'a reliable indicator of congressional intent' that courts lack the power to hear a challenge to agency action." *Blue Water Navy Vietnam Veterans Association, Inc. v. McDonald*, 830 F.3d 570, 573 (D.C. Cir. 2016).

## DISCUSSION

Appellant argues that the circuit court lacked the power to order her to reinstate Aelion as Representative Payee of Mr. Miseveth's VA benefits or, in the alternative, to

5

transfer those benefits to Aelion. Appellant maintains that Section 5502 of Article 38 of the United States Code provides "the Secretary of Veterans Affairs the exclusive power to appoint a fiduciary to receive and distribute veterans' disability benefits" and "extensive authority for supervising those appointed fiduciaries." Appellant further maintains that Section 511(a) of Article 38 of the United States Code provides an exclusive "remedial scheme regarding veterans' benefit determinations" and that, pursuant to that same statute, "the Secretary's authority in the area of determining and providing veterans' benefits is not subject to state court review." Appellant avers, therefore, that the circuit court lacked subject matter jurisdiction to enter its order regarding her appointment as Representative Payee and her use of Mr. Miseveth's VA benefits.

> 38 U.S.C. § 511(a) provides:
>
> The [Secretary of Veterans Affairs] shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.[1]

*Id.*

The plain language of the above statute makes clear that any decision by the VA "under a law that affects the provision of benefits" is not reviewable by any court,

---

[1] 38 U.S.C. § 511(b) provides several exceptions to the non-reviewability of the Secretary's decisions regarding the provision of benefits, none of which are applicable here. *Id.*

including the circuit court. *See Della Ratta*, 183 Md. App. at 356 ("The cardinal rule of statutory interpretation is to ascertain and effect the legislative intent. The process begins with the statutory language which will be given its plain meaning[.]"). Therefore, the question in the present case is whether the circuit court "reviewed" a decision by the VA in ordering appellant, who had been duly appointed as Representative Payee by the VA, to distribute her husband's VA benefits according to the pay schedule established by Aelion when she was Representative Payee. If so, then the court's order would be in violation of the jurisdictional mandates of 38 U.S.C. § 511(a) and must be reversed.

Unfortunately, there is a dearth of case law regarding the scope of the jurisdictional limitation set forth in 38 U.S.C. § 511(a), and even fewer cases, if any, that address the specific issues raised in the instant case. That said, several courts have had occasion to explore the contours of § 511(a), most notably the United States Court of Appeals for the Ninth Circuit in *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013 (9th Cir. 2012), *cert. denied* 568 U.S. 1086 (2013). There, the Ninth Circuit addressed, among other things, whether it lacked jurisdiction, pursuant to § 511(a), to decide if delays in the VA's provision of mental health care violated the Constitution and federal law. *Id.* at 1026. As part of its discussion, the Court engaged in a lengthy analysis of the legislative history and judicial construction of § 511(a). *Id.* at 1019-26.

Within that analysis, the Ninth Circuit noted that Congress first prohibited judicial review of the VA's benefits decisions in 1933, but that, over time, exceptions to that preclusion began to appear in several federal circuits. *Id.* at 1020. As a result, Congress amended the statute and enacted 38 U.S.C. § 211 (which would later become § 511) to

7

reemphasize "its 'clear' intent that the 'exemption from judicial review…be all inclusive[.]'" *Id.* (citations omitted). The Ninth Circuit then noted that, following the passage of § 211, the Supreme Court, in two separate cases, held that the statute did not bar judicial review under certain circumstances. *Id.* at 1020-21; *see also Traynor v. Turnage*, 485 U.S. 535 (1988); *Johnson v. Robison*, 415 U.S. 361 (1974). Congress responded once again, this time overhauling the VA's internal review mechanisms by implementing three fundamental changes: first, Congress created the United States Court of Appeals for Veterans Claims, which would be responsible for reviewing decisions made by the VA and the Board of Veterans' Appeals; second, Congress gave exclusive jurisdiction over decisions of the Veterans Court to the Federal Circuit; and, third, Congress changed the language of § 211 and enacted § 511 in order to "'broaden the scope of section 211' and limit outside 'court intervention' in the VA decision-making process."[2] *Id.* at 1021-22.

Following its discussion of the history of § 511, the Ninth Circuit then surveyed cases from various circuits to ascertain "the preclusive contours of § 511." *Id.* at 1023-25. That survey resulted in "some consistent, largely undisputed conclusions as to what § 511 does (and does not) preclude." *Id.* at 1023. Based on those conclusions, the Ninth Circuit determined that:

> § 511 precludes jurisdiction over a claim if it requires the district court to review VA decisions that relate to benefits decisions, including any decision made by the Secretary in the course of making benefits

[2] For these reasons, Aelion's reliance on *Hines v. Stein*, 298 U.S. 94 (1936), is misplaced, as that case was decided well before 38 U.S.C. § 511 was enacted in its current form.

8

determinations. This standard is consistent with Congress' intention to broaden the scope of the judicial preclusion provision and is reflected in § 511(a)'s plain statement that we may not review a decision by the Secretary under a law that affects the provision of [veterans'] benefits. This preclusion extends not only to cases where adjudicating veterans' claims requires the district court to determine whether the VA acted properly in handling a veteran's request for benefits, but also to those decisions that may affect such cases. If that test is met, then the district court must cede any claim to jurisdiction over the case, and parties must seek a forum in the Veterans Court and the Federal Circuit.

*Id.* at 1025-26 (internal citations and quotations omitted).

Based on the clear language of § 511(a) and Congress' express intent in limiting judicial review of VA decisions affecting the provision of veterans' benefits, we hold that the circuit court in the instant case lacked jurisdiction to enter judgment regarding the provision of Mr. Miseveth's VA benefits. 38 U.S.C. § 5502(a)(1) provides that "[w]here it appears to the Secretary that the interest of the beneficiary would be served thereby, payment of benefits under any law administered by the Secretary may be made directly to…a relative or some other fiduciary for the use and benefit of the beneficiary[.]" *Id.* In so doing, "[t]he VA is authorized to 'select and appoint (or in the case of a court-appointed fiduciary, to recommend for appointment) the person or legal entity best suited to receive [VA] benefits in a fiduciary capacity for a beneficiary who is mentally ill (incompetent) or under legal disability by reason of minority or court action[.]" *Evans v. Greenfield Banking Co.*, 774 F.3d 1117, 1120 (7th Cir. 2014). In addition, the federal statute provides the VA with supervisory authority over fiduciaries, including requiring a fiduciary to provide an accounting, terminating the appointment of a fiduciary,

9

investigating claims of malfeasance and misuse of funds, and referring matters to the VA's Regional Counsel.[3]  38 U.S.C. § 5502(b); *See also Evans*, 774 F.3d at 1120-21.

Here, it is undisputed that, following Aelion's appointment as Representative Payee, the VA conducted a separate investigation and determined that appellant, not Aelion, was best suited to act as the fiduciary of Mr. Miseveth's VA benefits and to receive said benefits on his behalf.  It is also undisputed that, as part of its investigation and appointment of appellant as Representative Payee, the VA established a pay schedule for how Mr. Miseveth's VA benefits would be spent.  Importantly, there is no indication in the record that appellant deviated from that schedule; rather, the only allegation of "misuse" levied by Aelion was that appellant did not use the funds in a manner consistent with how she, as guardian of Mr. Miseveth's property, wanted the funds to be used.  That being the case, Aelion was required to seek relief via the review scheme established by Congress, as the VA's appointment of appellant as Representative Payee and its determination regarding how Mr. Miseveth's benefits should be spent were clearly decisions made "under a law that affects the provision of benefits by the Secretary to veterans."  Consequently, the circuit court's "review" of that decision, which resulted in the court's ordering appellant to reinstate Aelion as Representative Payee and to

---

[3] The statute does grant the Secretary the authority to appear in a state court and to make "proper presentation" if the Secretary determines that a fiduciary is not properly executing his duties.  38 U.S.C. § 5502(b).  That statutory authority is not, however, a two-way street; that is, it does not permit a state court to intervene in matters involving the provision of VA benefits by the Secretary.

distribute Mr. Miseveth's VA benefits contrary to the pay schedule established by the VA, was precluded by § 511(a).

We further note that our holding does not stand for the proposition that every conceivable cause of action that may have some effect on a veterans' benefits is necessarily shielded from our review. In other words, we do not find that the circuit court lacked jurisdiction simply because its judgment had some tangential effect on Mr. Miseveth's VA benefits. Instead, the relevant case law shows that a court lacks jurisdiction when it is called upon to evaluate, whether directly or indirectly, the propriety of a decision made by the VA in the provision of a veterans' benefits. *See e.g. Blue Water*, 830 F.3d at 574 (bar to judicial review under § 511(a) not limited to individual benefits determinations but encompasses all decisions, even policy decisions, affecting the provision of veterans' benefits); *Hunt v. U.S. Dept. of Veterans Affairs*, 730 F.3d 706, 707 (D.C. Cir. 2014) (Privacy Act claim for damages was barred from judicial review because the claims were "based on the assertion 'that the VA's failure to maintain accurate and complete records adversely affected [a veteran's] benefits determinations.'"); *Jones v. U.S.*, 727 F.3d 844, 846 (8th Cir. 2013) (claim that VA negligently withheld benefits was barred from judicial review because it "would require the district court to determine whether the VA acted properly in handling [plaintiff's] benefits request.") (citations and quotations omitted); *King v. U.S. Dept. of Veterans Affairs*, 728 F.3d 410, 414 (5th Cir. 2013) (claim of negligence regarding termination of benefits was barred from judicial review because "the district court would have to analyze whether the VA's agents knew or should have known that the denial of

11

[plaintiff's] benefits was wrong."); *Veterans for Common Sense*, 678 F.3d at 1028 (claim that delays in the VA's provision of mental health care violated federal law was barred from judicial review because the court would need to "evaluate[] the circumstances of individual veterans and their requests for treatment, and determin[e] whether the VA handled those requests properly.").

As noted, there is no indication in the record that appellant, in her capacity as Representative Payee, handled Mr. Miseveth's VA benefits in a manner inconsistent with the pay schedule established by the VA. Moreover, there is no indication in the record that the circuit court ordered Aelion, as guardian of the property, to distribute Mr. Miseveth's VA benefits in a particular manner. Rather, the pay schedule championed by Aelion was established by the VA when Aelion was appointed as Representative Payee prior to appellant's appointment. By ordering appellant to revert back to that pay schedule, a pay schedule that the VA essentially disavowed when it appointed appellant as Representative Payee and established the new pay schedule, the court "reviewed" a decision by the VA regarding the provision of benefits and thus exceeded the jurisdictional limitations set forth in § 511(a). Accordingly, that portion of the court's judgment must be reversed.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED. COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.**