*Myers v. Board of Commissioners for Carroll County, MD., et al.*, No. 2305, September Term, 2017. Opinion by Wright, Alexander.

**SUBJECT MATTER JURISDICTION – ALTERING COUNTY BORDERS**

Article 13, Section 1 of the Maryland Constitution grants to the General Assembly the exclusive authority to create new counties and to alter boundary lines between existing counties. The courts have no authority to alter the boundary lines that separate the State's counties. Accordingly, the circuit court did not err in granting appellees' motion to dismiss where appellant requested that the circuit court alter the boundary line between Carroll County and Baltimore County.

Circuit Court for Carroll County
Case No. 06-C-17-073432

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2305

September Term, 2017

_____

DOUGLAS C. MYERS

v.

BOARD OF COMMISSIONERS
FOR CARROLL COUNTY, ET AL.

_____

Wright,
Kehoe,
Raker, Irma S.,
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Wright, J.

_____

Filed:  February 27, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This dispute arises out of a challenge to the location of the border between Baltimore County and Carroll County. On April 26, 2017, Douglas Myers, appellant, filed an action for declaratory relief in the Circuit Court for Carroll County against the appellees, Board of Commissioners for Carroll County, Maryland, and Baltimore County, Maryland. Myers specifically requested that the circuit court change the line between the counties from its current location to one that he alleged was consistent with the General Assembly's intent at the time Carroll County was created. In response, appellees filed a motion to dismiss Myers's claim. Upon determining that it did not have jurisdiction over Myers's claim, the circuit court granted appellees' motion to dismiss.

Myers now challenges the circuit court's order and presents the following question for our review, which we have reworded and consolidated for clarity:[1]

1.      Whether the circuit court erred in dismissing Myers's action for declaratory relief for lack of jurisdiction?

---

[1] Myers presented his questions to the Court as follows:

1.      Was the Appellant prejudiced by the Court treating the Motion to Dismiss as a Motion for Summary Judgment and considering matters outside the pleading without giving Plaintiff the opportunity to present material that may be pertinent to the Court's decision?

2.      Was the Appellant prejudiced by not being provided a jury trial on the merits of the case?

3.      Has the jurisdictional line between Baltimore and Carroll counties been changed and/or altered from its original location as described in the Acts of the General Assembly, December Session of 1835, Chapter 256?

For the reasons provided below, we answer this question in the negative and affirm the circuit court's judgment.

## BACKGROUND

Myers's challenge to the location of the border between Carroll County and Baltimore County arose from his ownership of land located at the border.[2] This case represents the third time that Myers has pursued litigation against appellees regarding the proper location of the border.

A. *2006 Lawsuit*

On December 16, 2002, Allender Property, LLC ("Allender"),[3] received a Concurrency Management Certificate ("CMC") from Carroll County. The CMC permitted Allender to build a residential community on the land at issue in the instant dispute. But on June 10, 2003, Carroll County adopted an ordinance suspending the approval of "all residential development plans which had not yet received formal approval from the Carroll County Planning Commission." Allender's development plan had not received approval from the County and was therefore suspended.

About three years later, Allender filed a lawsuit against Carroll County in the Circuit Court for Carroll County. In its complaint, Allender alleged that it suffered

---

[2] The property at issue was sold in a foreclosure sale in 2010, and Myers is no longer the owner of the property. Appellees contend that since Myers is no longer the owner of the property, he did not have standing to bring his latest suit against them. Since this case will be resolved on jurisdictional grounds, we need not address this contention.

[3] Myers held a 50% ownership stake in Allender Property, LLC.

financial injuries because of Carroll County's refusal to honor its CMC.  On March 11, 2009, Allender and the Board of County Commissioners of Carroll County entered into a Settlement Agreement and Mutual Release to resolve the lawsuit.  Therein, Allender agreed to "dismiss with prejudice all claims and controversies at issue in the litigation in exchange for payment in the amount of [$1 million], less amounts that [Myers and Allender] owed to the County."[4]

B. *2007 Lawsuit*

In 2007, Allender filed a lawsuit against appellees in the Circuit Court for Baltimore County.  In its "Complaint for Declaratory Judgment, Injunctive Relief, and Writ of Survey," Allender sought "a declaration from [the circuit court] regarding the legal location of the political boundary . . . between Baltimore County and Carroll County . . . ."

Allender alleged that the original boundary was established by the General Assembly in 1835 and was intended to be a straight line.  *See* 1835 Md. Laws, Chapter 256; *confirmed by* 1836 Md. Laws, Chapter 19 (Jan. 19, 1937).  Allender then pointed out that the General Assembly commissioned a survey to mark the boundary in 1840, *see*

---

[4] In their brief, appellees assert that "[o]ne of the defenses asserted by [Carroll County] in the 2006 lawsuit was lack of proximate cause."  Specifically, the County argued that the "proximate cause of [Myers's] failed attempts to develop the property, which continued well after the [d]eferral period was over, was his continual insistence that his position regarding the 'true' location of the boundary line was correct."  Appellees therefore argue that the "issue of the boundary line's location was actually litigation on the merits" in the 2006 lawsuit.  Since this case will be resolved on jurisdictional grounds, we need not address appellees' contention that the boundary issue had been litigated previously.

1840 Md. Laws, Chapter 10 (Jan. 8, 1841), and that this survey was completed by Amon Richards in 1841. Allender argued that the results of Amon Richards's survey were "not accurate."[5] Though the land in dispute was being "regulated and taxed by Baltimore County," Allender asserted that the land should have been under the jurisdiction of Carroll County. Allender therefore requested that the circuit court "declare that . . . the correct, legal [b]oundary between Baltimore County and Carroll County is the line [established in] 1835[.]"

The 2007 lawsuit concluded on August 24, 2007, when the parties agreed to file a voluntary dismissal of the complaint without prejudice. In response to Allender's contentions regarding Amon Richards's survey, appellees jointly prepared a "Retracement of the Survey enacted by the Maryland General Assembly in Chapter 10 of the Acts of 1840," ("Retracement Survey") in 2008. To conduct the Retracement Survey, "surveyors interpreted the General Assembly's intent and provided a conclusion regarding the boundary line." Appellees state that they have relied on the survey since its completion.

C. *The Instant Lawsuit*

The instant action began on April 26, 2017, when Myers, in his personal capacity,[6] filed a Complaint for Declaratory Judgment and Injunctive Relief against appellees in the

---

[5] Allender averred that since the boundary line established by the 1841 survey consisted of nine distinct lines, it was contrary to the legislature's original intention to create a single, straight-line boundary.

[6] At the time that the 2017 complaint was filed, the property at issue had most recently been owned by Allender Property I, LLC ("API"), of which Myers was the sole

4

Circuit Court for Carroll County. Myers brought three counts against the appellees: Count I - Action for Declaratory Judgment and Injunctive Relief; Count II - Additional Action for Declaratory Relief; and Count III - Other Action Including Costs. As to Count I, Myers asserted that "[a]ll parties [were] bound by administrative collateral estoppel" to follow a decision on the boundary made by a Zoning Commissioner in Baltimore County. As to Count II, Myers alleged that appellees illegally and erroneously changed the boundary line established by the General Assembly in 1835. Finally, as to Count III, Myers demanded the "full balance of compensatory damages due [to him] from the [2006] claim" in the amount of $700,000.00. Myers sought the following relief from the circuit court:

> Count I: "declare that Carroll County has, and must exercise, jurisdiction" over the property at issue.
>
> Count II: (A) declare that the 1841 Amon Richards's survey was ineffective to change the location of the boundary line from that created by the General Assembly in 1835; (B) declare that the 2008 Retracement Survey was ineffective to change the location of the boundary line; (C) declare that the location of the boundary line was in the same position as established by the General Assembly in 1835; and (D) declare that appellees have, and must continue to exercise, jurisdiction over the property within their jurisdictions as established by the General Assembly in 1835.
>
> Count III: (A) award to [Myers] the unpaid balance of compensatory damages from the 2006 lawsuit, $700,000, as well as costs arising from the instant suit; (B) order a speedy hearing of the suit; and (C) award to [Myers] any other relief the court deemed appropriate.

---

owner. However, as stated above, the property had been previously sold in a foreclosure sale in 2010. *See supra* n.2.

5

On June 16, 2017, appellees filed motions to dismiss Myers's complaint[7] and, in their supporting memorandum, provided several arguments as to why the circuit court should grant their motions.[8] Myers responded to the motions to dismiss on June 30, 2017,[9] and appellees filed their reply on September 13, 2017.

The circuit court held a motions hearing on September 26, 2017. At the hearing, in addition to making the arguments set out in their supporting memorandum, counsel for Carroll County averred that the circuit court did not have jurisdiction over Myers's claims. On December 5, 2017, the circuit court granted appellees' motions and dismissed the complaint without prejudice. In its opinion, the circuit court explained its ruling as follows:

> In the Plaintiff's prayers for relief, he seeks that the Court declare that Carroll County shall exercise jurisdiction over a portion of property located in Baltimore County. Because this relief, effectively, requires that the Court relocate, in some manner, the Carroll County and Baltimore County boundary line, *the Court has no jurisdiction to grant this relief as such relief must be granted by the General Assembly*.

---

[7] The motion to dismiss was originally filed by the Board of County Commissioners for Carroll County. Baltimore County later moved to dismiss and adopted the memorandum submitted by the Board of County Commissioners for Carroll County.

[8] Appellees provided four reasons that the claims should be dismissed: (1) that Myers lacked standing to assert his claims; (2) that Myers's claims were barred by the statute of limitations or laches; (3) that Myers's claims were barred by accord/satisfaction payment and release; and (4) that Myers's claims for damages were barred because he did not allege a tort claim, did not provide notice of the claim, and because he settled and released the claims at the conclusion of the 2006 lawsuit.

[9] In his response, Myers attempted to dismiss Count III of his complaint by filing a "notice to dismiss count III of the complaint without prejudice."

As to Count Two of the Plaintiff's Complaint, all of his prayers seek that the Court declare that the Amon Richards's Survey, the Retracement Survey and the precise location of the boundary line . . . between the Counties be at a location other than that which was recorded in the Amon Richards's Survey, authorized by the legislature. The Court has *no jurisdiction and, effectively, no power under the Maryland Constitution to move a county boundary*. Therefore, the Court cannot grant the relief the Plaintiff seeks in this regard.

The Court agrees that some legal action should occur to definitively resolve the precise location of the northeastern boundary. This is especially true when considered with the fact that the original legislation creating Carroll County calls for a straight line and the surveyor who marked the line some few years later leaves posterity with monuments, and the benefit of modern technology are nine separate segments with slightly different bearings and calls. Therefore, the legislature may, on its own initiative, take some action, if to do nothing more than to adopt the Retracement Survey as has been followed by both Carroll County and Baltimore County since it was performed. The Court, however, *does not have the authority to order the legislature to consider the matter nor take any other action which effectively requires the Court to consider possibly defining or relocating county boundaries*.

Count Three of the Complaint seeks a whole host of relief for past issues between the Plaintiff and the respective Counties, and as set forth in the pending Motions to Dismiss, the relief sought has been subsequently dismissed by the Plaintiff, and the Court will dismiss these claims without prejudice but will comment that the Court believes that all of the defenses raised by both Counties in this action in their respective pleadings are fully supported as to all allegations raised therein. All of the matters have been previously litigated . . . .

Myers filed a motion for reconsideration on December 15, 2017, where he argued that the circuit court dismissed his complaint "for reasons not contained in [appellees' pleading]," and that the circuit court's opinion was "biased." The circuit court denied Myers's motion on January 3, 2018.

Additional facts will be included as they become relevant to our discussion below.

7

**STANDARD OF REVIEW**

"Where a controversy is appropriate for resolution by declaratory judgment . . . the trial court must render a declaratory judgment." *Christ by Christ v. Dept. of Natural Resources*, 335 Md. 427, 435 (1994). The Court of Appeals has "emphasized, time after time, that dismissal 'is rarely appropriate in a declaratory judgment action.'" *Id.* (quoting *Popham v. State Farm*, 333 Md. 136, 140 n.2 (1993). In *Christ by Christ*, 335 Md. at 435, the Court of Appeals went on to explain, however, that "[i]t is proper to dismiss a declaratory judgment action only where there is a lack of jurisdiction or where a declaratory action is not an available or appropriate type of remedy." *See also Sprenger v. Public Service Com'n of Maryland*, 400 Md. 1, 20-21 (explaining that "when a declaratory judgment action is brought and the controversy is not appropriate for resolution by declaratory judgment, the trial court is neither compelled, nor expected, to enter a declaratory judgment"). Therefore, our task here is to determine whether the controversy was appropriate for resolution by declaratory judgment.

**DISCUSSION**

In his brief, Myers makes several arguments related to the validity of the various surveys that set out to establish the boundary line between Carroll County and Baltimore County. Our only task here, however, is to consider whether the circuit court erred in determining that it did not have jurisdiction over Myers's complaint.

On this point Myers asserts that he does not seek "to have the [circuit court] change the county line," but instead requests a determination "that the county line has not been changed and the county line remains as originally described" in 1835. Appellees

8

respond that the circuit court properly concluded "that it could not grant the relief requested by [Myers] . . . without effectively relocating the boundary line, which it could not do because such relief can only be granted by the General Assembly." We agree with appellees and hold that the circuit court did not err when it concluded that it did not have jurisdiction over Myers's complaint.

Article 13 of the Maryland Constitution grants the General Assembly the *exclusive authority* to create new counties and to alter boundary lines between existing counties:

> The General Assembly may provide, by Law, for organizing new Counties, locating and removing county seats, and changing county lines; . . . nor shall the lines of any county nor of Baltimore City be changed without the consent of a majority of the legal voters residing within the district, which under said proposed change, would form a part of a county or of Baltimore City different from that to which it belonged prior to said change . . . . No county lines heretofore validly established shall be changed except in accordance with this section.

Md. Const. Art. 13, § 1.

Under that exclusive authority, the General Assembly passed an Act to create Carroll County in 1835. *See* 1835 Md. Laws, Chapter 256 (March 25, 1836). In that Act, the General Assembly described the boundary line between Carroll County and Baltimore County as follows:

> Be it enacted by the General Assembly of Maryland, [t]hat . . . such parts of the aforesaid counties of Baltimore and Frederick, as are contained within the bounds and limits following, to wit: . . . thence with the Northern Branch of said Falls to the bridge erected over said falls on the Turnpike Road, leading from Reisterstown to Westminster, *thence with a straight course to the Pennsylvania line, running North seventeen degrees East*, thence with the Pennsylvania line to the place of beginning, shall be erected into a new county, by the name of Carroll County . . . .

*Id*. (emphasis added).

9

About five years later, the legislature authorized a survey to locate the boundary between Baltimore and Carroll counties. The Act stated, in pertinent part:

> Section 1. *Be it enacted by the General Assembly if Maryland*, [t]hat John Williams of Carroll [C]ounty, and William Wooden of Baltimore [C]ounty, be and they are hereby appointed commissioners to survey and locate the north-east line between Baltimore and Carroll [C]ounties, commencing at the bridge designated in the act creating Carroll County, erected over the Patapsco Falls on the turnpike road leading from Westminster to Baltimore, and running thence with a straight line north seventeen degrees east to the intersection of said line with the line dividing Maryland from Pennsylvania.
>
> Sec. 2. *And be it enacted*, [t]hat the said commissioners shall set up stones on said lands at such equal distances as they may deem proper and necessary, and mark them number one, two, and so on progressively through the whole line; and that *the line thus surveyed, located and marked, shall be forever the proper divisional line between Baltimore and Carroll [C]ounties*.

1840 Md. Laws, Chapter 10 (Jan. 9, 1841) (emphasis added). The General Assembly directed the commissioners to establish the boundary line "to the best of their skill and judgment" and "as nearly as may be . . . to the intent and meaning" of the 1835 Act establishing Carroll County. *Id*. at § 3. Under the authority of the 1840 Act, Amon Richards completed his survey of the boundary line in 1841, and the line he surveyed has remained the effective boundary between the two counties.

In its 1840 Act, the General Assembly unequivocally expressed its intention that the boundary line surveyed by Amon Richards "shall be forever the proper divisional line between Baltimore and Carroll Counties." *See* 1840 Md. Laws, Chapter 10 § 2. And as appellees point out in their brief, the legislature directed the survey to be completed "to the best of [the surveyors'] skill and judgment" and knew that the limits of "19th century surveying technology" may prevent the surveyors from tracing a boundary that was

10

*exactly* what the legislature intended. Therefore, as required by the Act, the boundary line surveyed by Amon Richards became, and remains, the proper boundary line between the counties.[10] This is so despite any earlier legislation that attempted to set out the boundary, as the 1840 Act supersedes any legislation that came before it.

Though we recognize, as did the circuit court, that "some legal action should occur to definitively resolve the precise location of the northeastern boundary," any such action cannot come from the courts. If the boundary between Baltimore County and Carroll County is to change, the State's Constitution commands that such a change be enacted only by the General Assembly. *See* Md. Const. Art. 13, § 1.[11]

For the reasons stated above, we hold that the circuit court properly determined that it did not have jurisdiction over Myers's claims. Therefore, the court did not err in dismissing Myers's action for declaratory judgment. *See Christ by Christ*, 335 Md. at 435 ("It is proper to dismiss a declaratory judgment action . . . where there is a lack of jurisdiction[.]")

---

[10] The 2008 Retracement Survey does not alter the Court's analysis. Despite Myers's contention that the Retracement Survey changed the boundary between the counties, the survey did nothing more than "retrace" the survey that Amon Richards completed in 1841.

[11] In his brief, Myers argues that in dismissing the complaint for lack of jurisdiction, the circuit court considered matters outside of the appellees' motions to dismiss. To make this argument Myers points out that appellees did not include a jurisdictional argument in their original motions to dismiss. *See supra* n.8. This argument is unavailing. As appellees stated in their brief, "[a] court is obligated to inquire at the outset whether it has jurisdiction over a matter, regardless of whether it is argued by the parties." *Miseveth v. Aelion*, 235 Md. App. 250, 256 (The issue of subject matter jurisdiction need not be raised by any party, but may be raised by a court, *sua sponte*, at any time.).

**JUDGMENT OF THE CIRCUIT COURT
FOR CARROLL COUNTY AFFIRMED;
COSTS TO BE PAID BY APPELLANT.**