*Esau Antonio Orellana Velasquez v. Cecilia Del Carmen Carranza Fuentes*, No. 1547, Sept. Term, 2023. Opinion filed on June 26, 2024, by Wells, C.J.

**FAMILY LAW – CUSTODY – DEFAULT JUDGMENTS**

Default judgments are governed by Maryland Rule 2-613. In the child custody realm, default judgments require a nuanced application. Under very specific circumstances, circuit courts have discretion to utilize Rule 2-613(e) and (f)'s "ameliorating flexibility" to modify default orders before they become enrolled final judgments.

In this case, the custody order resulted from an order of default properly entered by the circuit court, rendering it an enrolled final judgment. Under the circumstances, the circuit court did not have broad authority to *sua sponte* vacate that order merely because it arose from a judgment of default.

**FAMILY LAW – CUSTODY – REVISORY POWER**

The Maryland Code Annotated Courts and Judicial Proceedings (CJP) Article § 6-408 and Maryland Rule 2-535(a) provide courts with the power to revise judgments under certain circumstances. CJP § 6-408 provides that within thirty days after a judgment is entered, or thereafter pursuant to a motion filed within that period, a court has power to revise its judgment. Rule 2-535(a) provides that, on motion filed within thirty days after a judgment is entered, the court may exercise its revisory power.

Here, the court acted improperly in vacating the custody order several months outside of the thirty-day window when neither party moved to revise the judgment under the statute or Rule. The court's action was improper because appellate authority has determined that if a court acts to *sua sponte* revise a judgment under CJP § 6-408 or Rule 2-535(a) it must do so within the thirty-day time limit set forth in the statute or Rule.

**FAMILY LAW – CUSTODY – REVISORY POWER**

Under Rule 2-535(b), on motion of a party, a court may exercise its revisory power over a judgment but only in case of fraud, mistake, or irregularity. As interpreted by appellate cases, an "irregularity" is a failure to follow required process or procedure, which can include the failure of a court employee from performing a duty required by statute or rule. Proof of an irregularity provides very narrow grounds for revising final judgments, specifically, to prevent hardships that may result from a lack of notice and the corresponding lack of opportunity to interpose defenses prior to enrollment of judgment.

We hold that in this instance, the seeming unavailability of a recording or transcript of the custody proceeding is not an irregularity under Rule 2-535(b). Mother did not lack notice of the custody hearing nor was she unable to put on a case. In short, Mother failed to

establish hardship simply because a recording of the custody proceeding was not available at the time of a later hearing.

**FAMILY LAW – CUSTODY – MODIFICATION**

Modifying custody requires a court to engage in a two-step process. The first and threshold requirement is that the moving party prove a material change in circumstances. If the moving party fails to prove such a change, the court's inquiry stops there. But if the moving party proves a material change in circumstances, the court may then consider which of now two competing custody alternatives is in the best interest of the child.

Here, a magistrate determined Mother had not proven a material change in circumstances and stopped the analysis. Mother filed exceptions arguing that the magistrate should have engaged in a best interests analysis. The court agreed with Mother and remanded to the magistrate to perform a best interests analysis. We hold the circuit court erred in concluding that the magistrate was required to conduct a best interest analysis when determining if a material change in circumstances occurred.

**FAMILY LAW – CUSTODY – RES JUDICATA**

The doctrine of *res judicata* holds that a judgment between the same parties is a bar to another suit arising upon the same cause of action, including matters which could have been litigated in the original suit. In custody cases, the "material change" standard upholds the principles of *res judicata* by requiring that the movant prove such a change before a custody order may be modified. Because the custody order in this case was viable, *res judicata* prohibited Mother from litigating at the modification hearing and the subsequent hearing on exceptions issues that occurred before the custody order was enrolled.

Circuit Court for Prince George's County
Case No. CAD21-10484

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1547

September Term, 2023

_____

ESAU ANTONIO ORELLANA VELASQUEZ

v.

CECILIA DEL CARMEN CARRANZA
FUENTES

_____

Wells, C.J.,
Beachley,
Wright, Alexander, Jr.,
   (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Wells, C.J.

_____

Filed: June 26, 2024

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This appeal arises from a custody dispute between appellant, Esau Antonio Orellana Velasquez ("Father"), and appellee, Cecilia Del Carmen Carranza Fuentes ("Mother"), regarding their minor child, G.C. Father filed a complaint for custody in the Circuit Court for Prince George's County, but Mother did not file an answer. At the father's request, the court entered an order of default. Later, after a hearing, the court enrolled a custody order.

Mother did not appeal that judgment, but instead moved to modify custody. A magistrate denied Mother's motion, finding she had not proven a threshold material change in circumstances. Mother filed exceptions. After a hearing, the circuit court sustained Mother's exceptions and, without notice to either party, the court *sua sponte* vacated the custody order. Weeks later, Mother moved to set aside the order of default, which the circuit court granted.

Father timely appealed and presents two questions for review, which we have reordered and slightly rephrased:[1]

1. Did the circuit court err when it vacated the default judgment and the custody order?

2. Did the circuit court err when it granted Mother's exceptions to the magistrate's recommendations?

---

[1] Father's questions, presented verbatim, are as follows:

1. Whether the trial court erred when it granted appellee's exceptions to the Magistrate's recommendations.

2. Whether the trial court erred when it vacated the original custody order and vacated the default without providing Appellant the time period to respond.

For the reasons that we discuss, we conclude the circuit court erred as to both issues and reverse.

<h3 style="text-align:center">FACTUAL AND PROCEDURAL BACKGROUND</h3>

Mother and Father are the biological parents of G.C., born on November 8, 2018. Mother and Father were never married. Before these proceedings, the parties did not have a custody order from any court. Mother lived in Texas with G.C. and Father lived in Maryland.

At some point, G.C. came to live with Father, and Father filed a complaint for custody in the Circuit Court for Prince George's County on September 21, 2021. Mother was properly served but did not answer. As a result, Father requested an order of default. Subsequently, the court entered a default against Mother on February 15, 2022.

Thereafter, on March 21, 2022, the court held a hearing before a magistrate on Father's complaint for custody. Mother did not appear at the hearing, even though she received notice and later admitted that she knew that the hearing was taking place. After the hearing, the magistrate recommended Father be awarded joint legal custody and primary physical custody of G.C. Mother was to be granted access with G.C. under a schedule outlined in a proposed order. The court ratified the magistrate's recommendations and issued an order dated April 7, 2022. Mother never appealed the entry of the custody order.

More than ninety days later, on July 18, 2022, Mother moved to modify custody, alleging, as a material change, that Mother was moving her primary residence from Texas

2

to Maryland. A magistrate conducted a hearing on the motion on November 1, 2022, with both parties present with counsel. Mother and Father testified.

At the start of the hearing, the magistrate told the parties that Mother was required to show a material change in circumstances had occurred, since the custody order was entered before the magistrate could determine what custody arrangement was in G.C.'s best interests. Because the magistrate was concerned with what changes had occurred since the custody order was established, the magistrate prohibited Mother from presenting evidence regarding the circumstances surrounding the default judgment and events that occurred before the custody order was enrolled.

Mother testified that she lived in Maryland with her parents, brother, two aunts, and her six-month old baby, G.C.'s younger brother. She testified that she and G.C. were always together and very happy until Father had "taken" G.C. away from her. However, Mother testified that Father had done well taking care of G.C. Mother said she had "the intention" to stay in Maryland but said she frequently returned to Texas to take her infant son to the pediatrician. She also mentioned having "second thoughts" about remaining in Maryland because she had "a stable home to go back to in Texas, where [she] can raise [her] children." Mother confirmed that she resided in Texas "on and off" for two years. On one occasion, Mother canceled visitation with G.C. to return to Texas to take her son to his doctor. Mother testified that Father told her his wife takes care of G.C. while Father works, and that sometimes Father's sister in-law provided care because Father's wife began working again. Mother testified that she planned to watch G.C. until G.C. started school.

3

Father testified he lived with his wife, mother-in-law, brother-in-law, sister-in-law, and aunt. He works for an electrical company, and sometimes returned home by 6:00 p.m., which is why his wife and his sister-in-law looked after G.C. However, his normal hours were 7:00 a.m. to 3:00 p.m. After he testified, Father moved to dismiss because Mother had failed to establish a material change in circumstances. Mother opposed, arguing G.C. and Mother's infant child had developed a close relationship.

The magistrate noted that Mother failed to appeal the custody order but instead filed the motion to modify ninety days later. The magistrate concluded that the motion to modify was "basically just reiterat[ing] the language from the prior order." The magistrate explained that the fact that G.C. was living in Maryland was not a material change in circumstances. Further, the magistrate concluded that Mother's claim about moving to Maryland was dubious because Mother admitted to having strong ties to Texas and concluded that it was unlikely, given those ties, that Mother would relocate to Maryland. Having found that nothing had changed since the custody order was established, the magistrate granted Father's motion to dismiss.

Mother timely filed exceptions to the recommendations on November 11, 2022, arguing in her papers that (1) the magistrate declined to hear evidence regarding G.C.'s life before the custody order, and (2) that under Rule 2-208(i)(1) testimony was required for a best interest of the child analysis. In his pleadings, Father argued that Mother had no meritorious argument, as she did not describe what evidence she wished the court to consider. Further, he argued Mother never asked the court to set aside the custody order by moving for a new trial or for the court to alter or amend the judgment. Father argued the

4

principles of *res judicata* should prevail and that it was proper for the magistrate to refuse evidence regarding circumstances from before the custody order.

The court held a hearing on Mother's exceptions almost one year later, October 6, 2023. Both parties argued what was set forth in their written pleadings. At the hearing, the court asked Mother's counsel if the magistrate did a best interests analysis using the so-called *Taylor* factors.[2] Counsel answered in the negative. The circuit court asked counsel what findings were made at the custody hearing and noted that the custody order used "boilerplate language." The court continued, explaining that, because the custody order was entered by way of a default, there was "no baseline" against which to measure a material change in circumstances. The court also considered whether the default judgment was irrelevant. The circuit court ultimately determined the magistrate should have considered what was in G.C.'s best interest and performed a *Taylor* factor analysis. The court concluded that because the magistrate "didn't make a determination as to what's in the best interest of the child, then I'm going to send it back so the magistrate can do that." The circuit court further expounded on its rationale, emphasizing the importance of the magistrate doing the *Taylor* factor analysis because determining what was in G.C.'s best interest was critical in considering a material change in circumstances.

In a written order dated October 13, 2023 the circuit court sustained Mother's exceptions. Even though Mother had not requested it, and without notice to either Mother

---

[2] *Taylor v. Taylor*, 306 Md. 290 (1986).

or Father, the court vacated the custody order and set a hearing before a magistrate to redetermine custody. Five days later Father appealed.

On January 12, 2024, Mother moved to vacate the February 15, 2022 order of default. Before Father could respond, six days later, on January 18, 2024, the circuit court granted Mother's motion and set aside the default judgment. We will supply additional facts in our analysis when necessary.

## DISCUSSION

### I.    Standard of Review

In evaluating custody determinations, this Court "utilize[es] three interrelated standards of review." *Gillespie v. Gillespie*, 206 Md. App. 146, 170 (2012). *First*, "[w]hen reviewing a [magistrate's] report, both a trial court and an appellate court defer to the [magistrate's] first-level findings (regarding credibility and the like) unless they are clearly erroneous." *McAllister v. McAllister*, 218 Md. App. 386, 407 (2014); *see also Montgomery Cnty. Dep't of Soc. Servs. v. Sanders*, 38 Md. App. 406, 419 (1977). *Second*, **"**[i]f it appears that the [circuit court] erred as to matters of law, further proceedings in the trial court will ordinarily be required unless the error is determined to be harmless." *In re Yve S.*, 373 Md. 551, 586 (2003) (internal citations omitted).

*Finally*, "when the appellate court views the ultimate conclusion of the [court] founded upon sound legal principles and based upon factual findings that are not clearly erroneous, the [court's] decision should be disturbed only if there has been a clear abuse of discretion." *Gillespie*, 206 Md. App. at 170; *see also McAllister*, 218 Md. App. at 407 ("[W]hile the circuit court may be 'guided' by the [magistrate's] recommendation, the

6

court must make its own independent decision as to the ultimate disposition, which the appellate court reviews for abuse of discretion."). A court abuses its discretion when

> no reasonable person would take the view adopted by the [trial] court, or when the court acts without reference to any guiding rules or principles. It has also been said to exist when the ruling under consideration appears to have been made on untenable grounds, when the ruling is clearly against the logic and effect of facts and inferences before the court, when the ruling is clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result, when the ruling is violative of fact and logic, or when it constitutes an untenable judicial act that defies reason and works an injustice.

*Das v. Das*, 133 Md. App. 1, 15-16 (2000) (citing *North v. North*, 102 Md. App. 1, 13-14 (1994) (internal quotations omitted)).

## II. The Circuit Court Erred When it Vacated the Custody Order.

### A. Parties' Contentions

Father contends, *first*, that the circuit court violated his due process rights under the United States Constitution when it vacated the custody order. Specifically, he argues the circuit court stripped him of his constitutional liberty interest regarding family affairs by failing to provide him with notice or adequate time to respond to its decision to vacate the custody order. Father contends Rule 2-311 allows a party fifteen days to respond to a motion; however, the circuit court here granted Mother's motion to vacate only six days later, without any response from Father.

*Second*, Father contends the circuit court's decision violated the Supreme Court of Maryland's rule-making powers. What Father means is that the circuit court improperly utilized Md. Rule 2-535(b), which allows a court to exercise revisory power over a judgment more than 30 days after its entry "only upon a finding of fraud, mistake, or

irregularity." The court's action was improper because Mother did not move at all for the court to exercise its revisory powers, let alone within the thirty-day period set forth in the Rule.

Finally, Father contends *res judicata* applies to the custody order. Mother was properly served and given notice of the custody hearing but failed to appear or answer. Consequently, so he asserts, the evidence that Mother wanted to present to the magistrate and the court concerning events that occurred before the custody order was enrolled were properly excluded, because those issues should have been litigated at the custody hearing.

Mother contends the circuit court had authority to vacate the custody order on its own initiative. Specifically, Mother argues *first*, the court had discretion to *sua sponte* act because Maryland case law provides the basis to do so. Mother *next* contends that Maryland Rule 2-535(b) permitted the circuit court to vacate the custody order because it was entered subject to irregularity, namely the failure of a court employee to record the proceedings of the March 21, 2022 custody hearing which Mother did not attend. Further, she contends a separate irregularity existed because no best interest of the child analysis was done by the magistrate.

Additionally, Mother argues Father was afforded due process because, even though the court did not explain that it was considering striking the custody order, Father was given ample opportunity to be heard at the Exceptions hearing. Mother asserts that the court's failure to give Father fifteen days to respond before spontaneously vacating the custody order was harmless error. Lastly, Mother contends the custody order is subject to

8

the court's broad revisory power, and the court exercised such discretion in the interest of justice.

### B. Analysis

**a. This Court's Interpretation of Rule 2-613 in *Flynn* Did Not Give Circuit Courts Unfettered Authority to Sua Sponte Vacate Custody Orders.**

As a preliminary matter, we address default judgments generally and how they are to be construed in custody cases. As a starting point we look to Mother's argument citing case law that states "the trial court has broad discretion to vacate an order of default at any point before it becomes an enrolled final judgment." *See Peay v. Barnett*, 236 Md. App. 306, 317-18 (2018); *Bliss v. Wiatrowski*, 125 Md. App. 258, 265 (1999). Mother contends the custody order here, because it arose from an order of default, was within the broad discretion of the circuit court to vacate.

Before analyzing default judgments in custody cases, it is helpful to say a few words about default judgments generally under Maryland law. Default judgments are governed by Maryland Rule 2-613 which states, that "a plaintiff may seek a default judgment against a defendant who fails to plead." This Court explained that default judgments involve a two-step process. *Peay*, 236 Md. App. at 317-18.

The first step is obtaining an order of default. Once the time for a defendant to answer has expired, a plaintiff may request in writing that the court enter an order of default. Md. Rule 2-613(b). After the court enters an order of default, the clerk must issue notice to the defendant that the order of default has been entered and that the defendant

9

may move to vacate the order within thirty days of its entry. Md. Rule 2-613(c). The notice

must be mailed to the defendant (and counsel, if any) at the address on file. *Id.*

Rule 2-613(d) provides that "the defendant may move to vacate the order of default

within 30 days after its entry. The motion shall state the reasons for the failure to plead and

the legal and factual basis for the defense to the claim." Upon reviewing the circumstances

before it, if the court finds that there is a sufficient basis for an actual controversy and it is

equitable to excuse the failure to plead, the court shall vacate the order. Md. Rule 2-613(e).

The second step is obtaining a default judgment. Rule 2-613(f) provides that:

> If a motion to vacate was not filed under section (d) of this Rule or was filed
> and denied, the court, upon request, may enter a judgment by default that
> includes a determination as to the liability and all relief sought, if it is
> satisfied (1) that it has jurisdiction to enter the judgment and (2) that the
> notice required by section (c) of this Rule was mailed. If, in order to enable
> the court to enter judgment, it is necessary to take an account or to determine
> the amount of damages or to establish the truth of any averment by evidence
> or to make an investigation of any matter, the court, may rely on affidavits,
> conduct hearings, or order references as appropriate and, if requested, shall
> preserve to the plaintiff the right to trial by jury.

Unlike a default judgment, which is a final judgment and not subject to the revisory power

under Rule 2-535(a), an order of default is interlocutory in nature and may be revised by

the court at any time up until it becomes a default judgment. Md. Rule 2-613(g). The

Supreme Court of Maryland has emphasized the defaulting party's responsiveness is

paramount to their chances of avoiding default, stating that "[p]ermitting a defaulting party

to lie in wait, after having failed to timely respond to a complaint and also to move to vacate

a default order would permit the default procedure under Rule 2-613 to be nullified."

*Franklin Credit Mgmt. Corp. v. Nefflen*, 436 Md. 300, 325-26 (2013); *see also Att'y*

*Grievance Comm'n v. Thomas*, 440 Md. 523, 549 (2014) ("[A]n order of default determines liability conclusively, and such a determination may be set aside only if the defendant moves successfully to vacate the order.").

Default judgments have a more nuanced application in custody cases. In *Flynn v. May*, 157 Md. App. 389 (2004), we considered, under the particular facts of that case, whether the award of a change of primary custody of a minor child by default constituted an abuse of discretion. There, the father filed a petition seeking primary custody of the parties' six-year-old child and child support. *Id.* at 391-92. The mother was served with a copy of the father's petition. *Id.* at 392. The mother, representing herself, filed a responsive pleading, but failed to include a certificate of service. *Id.* The clerk of the court advised the mother of the need to file a certificate of service, but mother never did. Consequently, she did not properly answer the complaint. *Id.* The father requested an order of default, which the court granted, and set the matter for a hearing on the merits. *Id.* at 392-93, 394-95. The order of default notified the mother that she had thirty days in which to move to vacate the order. *Id.* at 395.

At the merits hearing, the mother appeared with five witnesses who were prepared to testify on her behalf. *Id*. However, the court determined that neither the mother nor her witnesses could offer any testimony or evidence because the mother did not move to strike the order of default. *Id*. Ultimately, the court awarded custody to the father and ordered the mother to pay child support. *Id.* at 397-98. The mother subsequently obtained counsel and filed a motion to alter or amend the judgment, which was denied. *Id.* at 399. She timely appealed.

11

We held that the circuit court abused its discretion in prohibiting mother from testifying, even though she had not moved to vacate the default. *Id.* at 412. In reaching that conclusion, we examined the application of Rule 2-613(e) and (f), and their "Ameliorating Flexibility." *Id.* at 399-404. *First*, in discussing *Banegura v. Taylor,* 312 Md. 609, 619 (1988), we emphasized that "the defendant's failure [to move to vacate] does not foreclose the trial judge's discretionary notice of an issue if 'the interest of justice' would nonetheless indicate that the order of default should be modified. *Id.* at 400. Continuing, we stated:

> That the court possessed such discretion, even under subsection (e), is the immediate premise that we are stating. Proceeding from that premise, the question will ultimately arise as to whether the court's *sua sponte* obligation to consider the best interest of the child does not, *ipso facto,* create 1) "a substantial and sufficient basis for an actual controversy as to the merits of" the award of custody and 2) a concomitant duty to override any order that would otherwise prevent him from receiving evidence as to those merits. . . . *[An] order of default was subject to* the court's plenary revisory power, so it was well within *the court's discretion to set it aside.* Furthermore, we note that *a trial judge has broad discretion to modify an interlocutory order where that action is in the best interests of justice.*

*Id.* at 401, 402. (emphasis in original).

Then, we discussed Rule 2-613(f) in a similar light as section (e) and mentioned that "what is being expressed is a broad philosophical approach to default judgment, the idea that technicality must not triumph over justice. That philosophy is not narrowly or stingily caged." *Id.* at 403 (referencing *Royal Insurance Co. of America v. Miles and Stockbridge, P.C.,* 133 F.Supp.2d 747, 768–69 (D.Md.2001) ("Maryland Courts have repeatedly held that a trial court's discretion to vacate default judgments 'must be exercised liberally, lest technicality triumph over justice.") (emphasis omitted)). Upon noting the broad discretion set forth in part (f), we noted that it "is a sweeping grant of discretionary authority, and

12

child custody is quintessentially a ground on which technicality and justice may be in stark collision." *Id.* at 404.

We noted that the concept of default judgment arose out of tort cases. In the context of custody cases, however, we concluded that where there is "a single unbifurcatable issue, an analogy to how default judgment is handled in the context of tort cases is impossible . . . . [D]efault judgment cannot substitute for a full evidentiary hearing when a court, in order to determine custody must first determine the best interest of the child." *Id.* at 407.

But significantly, we did not hold that default judgments were prohibited in custody cases. To the contrary, at the outset of the discussion we stated:

> **As sorely tempted as we are to hold flatly that the default judgment procedure of Maryland Rule 2-613 is not applicable to child custody disputes, it is not necessary to go so far.** We are content to hold that, at the hearing on August 1, 2003, the trial court, **in the circumstances of this case**, abused its discretion when it ordered a change in the primary physical custody of [the child] without permitting witnesses to testify or other evidence to be offered.

*Id*. at 411-12 (emphasis supplied).

In *Wells v. Wells*, 168 Md. App. 382 (2006), we also considered a default judgment in the child custody context. The case was initiated when the father filed a divorce and child custody action. *Id*. at 386. The mother failed to file an answer. *Id.* The father filed a motion for order of default, but the mother did not file a response. *Id.* The court issued a notice of default order that was mailed to the mother at the marital home, where, at the time the action began, the mother lived. *Id.* The mother did not file a motion to set aside the default order. *Id.* A hearing before a magistrate (at that time called a "master") was

13

scheduled but the mother did not appear at the hearing. *Id.* The father appeared with counsel and several witnesses. *Id.* The magistrate issued findings and recommendations including that the father was a fit and proper person to have custody of the parties' minor child, that the mother should pay child support in a specified amount, and that the father should be granted use and possession of the home. *Id.* at 387-88. A copy of the magistrate's findings and recommendations was mailed to the mother at the marital home. *Id.* at 388. Thereafter, the court adopted the magistrate's findings and recommendations. *Id.*

Eight days later, the mother filed a motion to vacate the order of default. *Id.* She alleged that she had been served with the complaint and summons, but that the father told her it was a settlement agreement. *Id.* The father told the mother to "tear up the papers[ ]' because he wanted to work on their marriage[,]" and the parties resumed their marital relations. *Id.* at 388-89. Other than the complaint and summons, the mother said she did not receive any documents from the court. *Id.* at 389. According to the mother, three days after the judgment of absolute divorce was entered, a deputy sheriff arrived at the marital home, told her that she and her husband were no longer married, and that she would have to vacate the premises. *Id.*

The mother maintained that the father procured the judgment of divorce fraudulently and that she had a meritorious defense to both the grounds for divorce and the claim for custody. *Id.* at 389-90. Mother then filed a motion to alter or amend, where she argued that justice mandated opening the judgment to receive additional evidence about what was in the child's best interests and other issues. Ultimately, the circuit court denied the mother's motions without a hearing. *Id.* at 391.

14

On appeal, the mother argued that the trial court abused its discretion in denying her motion for new trial and to vacate the default judgment. We agreed with Mother holding that the trial court abused its discretion in denying the mother's "motion to vacate the default judgment as to all issues except the decision to grant a divorce." *Id.* at 396. In our conclusion, we analyzed and accepted the "ameliorating flexibility" of 2-525(e) and (f) set forth in *Flynn*, and we noted that the child "had an indefeasible right to have his best interests considered in a full evidentiary hearing"; therefore, a "default judgment cannot substitute" for such a hearing "when a court, in order to determine custody, must first determine the best interest of the child." *Id.* at 396-97 (quoting *Flynn*, 157 Md. App. at 407).

While *Flynn and Wells* are still good law, both are tailored to the circumstances present in each case. Those circumstances are inapplicable to the facts presented here. *First*, *and most importantly*, *Flynn* concerned vacating a default order before the court had determined custody in the first instance. In this case we have an enrolled custody order. Indeed, each case we relied on in *Flynn* involved orders of default not final custody judgments. *See Carter v. Harris,* 312 Md. 371 (1988); *Banegura*, 312 Md. at 619; *Bliss v. Wiatrowski,* 125 Md. App. 258, 265 (1999); *Holly Hall Publications, Inc. v. County Banking & Trust Co.,* 147 Md. App. 251, 263 (2002).

*Second*, the default order in *Flynn* was entered against a mother who thought she had adequately answered the complaint for custody. Here, the record reflects that Mother did not attempt to answer the complaint. *Third*, in *Flynn* the mother was an active participant who appeared at the scheduled hearing with five witnesses prepared to testify

15

on her behalf. In this case, Mother knew of the hearing but did not appear.[3] *Fourth*, after the court prohibited her from presenting evidence, the mother in *Flynn* immediately filed a motion to amend or alter the judgment. Here, Mother took no such steps after the custody order was entered.

*Wells* is similarly inapplicable factually and procedurally. Significantly, there, the mother did not appear for the custody hearing and a judgment of divorce was entered due in large part to the father's nefarious behavior. Specifically, the father allegedly intercepted the mother's mail and intentionally misled her about the nature of the proceedings. By contrast, here, we have nothing to indicate Mother was in some way thwarted from participating in the process.

Custody orders are treated as final judgments. *See Ruiz v. Kinoshita*, 239 Md. App. 395 (2018). As such, "[a]n order determining custody must be afforded some finality." *Frase v. Barnhart*, 379 Md. 100, 112 (2003); *see also McCready v. McCready*, 323 Md. 476, 481 (1991). Thus, once a final custody order is entered it cannot be altered or amended, absent court action based upon a request to do so under, for example, Rule 2-535 or Courts and Judicial Proceeding (CJP) Article of the Maryland Code Annotated § 6-408 or at the

---

[3] We are mindful about access to justice issues that arise when a parent is not a native English speaker, lives a considerable distance from the trial venue, and may have limited financial resources. But we note that Mother hired counsel in Texas, eventually traveled to Maryland, hired counsel, and participated in the modification hearing and all subsequent proceedings. Further, she did not notify the court of any difficulties involving language or travel and seek a postponement to try to timely address these matters if they were in fact barriers to her participating in the custody hearing. Additional resources available to Mother in Maryland (waiver of fees, a translator, referral to family services, as examples) could have aided her in being a more active participant in the initial custody process.

direction of an appellate court. The Maryland Supreme Court explained that "once a case is decided, it shall remain decided with certain very narrow exceptions." *Early v. Early,* 338 Md. 639, 651 (1995). "The rationale behind strictly limiting a court's revisory power is that in today's highly litigious society, there must be some point in time when a judgment becomes final." *Tandra S. v. Tyrone W.*, 336 Md. 303, 314 (1994) (*superseded by statute on other grounds*).

Consequently, we hold that once a final custody order is entered by a circuit court, it is treated as a final judgment. To be sure, a final custody order always remains subject to revision, but it is not treated as an interlocutory decision, such as an order of default, as the circuit court treated it here. When the custody order results from an order of default, and a hearing on the default custody order is subsequently conducted, that decision becomes a default judgment. And, as such, default judgments are final judgments under Maryland law.

We hold that neither *Flynn* nor *Wells* endorse a court's broad authority to vacate default judgments in custody cases. We make clear that the "ameliorating flexibility" of 2-613(e) and (f) articulated in *Flynn* does not give a circuit court broad discretion to vacate default judgments. The timing, whether the court is dealing with an enrolled custody order, and other factual circumstances are important. When weighing whether to strike a default judgment in a custody case, the court should carefully consider these and any other relevant factors.

**b. The Circuit Court Had No Authority to Exercise Its Revisory Powers Under Either Courts and Judicial Proceedings Article § 6-408 or Maryland Rule 2-535(a).**

In her brief, and at oral argument, Mother argued that the circuit court could *sua sponte* exercise its revisory powers over the custody order under Maryland Code Annotated's Courts and Judicial Proceedings (CJP) Article § 6-408 and Maryland Rule 2-535(a) or (b). She is incorrect. Neither the statute nor the Rule permitted the court to strike the custody order under the facts presented in this case.

A court may exercise its revisory powers either by statute or Rule. CJP § 6-408. provides:

> **For a period of 30 days after the entry of a judgment**, or thereafter **pursuant to motion filed within that period,** the court has revisory power and control over the judgment. After the expiration of that period the court has revisory power and control over the judgment only in case of fraud, mistake, irregularity, or failure of an employee of the court or of the clerk's office to perform a duty required by statute or rule.

(Emphasis added). *See Maryland Bd. of Nursing v. Nechay*, 347 Md. 396, 407 (1997).

Similarly, Rule 2-535 states:

(a) Generally.—On motion of any party filed **within 30 days after entry of judgment**, the court may exercise revisory power and control over the judgment and, if the action was tried before the court, may take any action that it could have taken under Rule 2-534.

(b) Fraud, Mistake, Irregularity. On motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity.

(Emphasis added.)

A court may act on its own to revise a judgment. "The exercise of the court's discretion is not triggered exclusively . . . by a motion filed by one of the parties. The court may act to revise its judgment *sua sponte*." *Nechay*, 347 Md. at 409 (citing *Yarema v. Exxon,* 305 Md. 219, 241 (1986)); *see also Higginbotham v. Pub. Serv. Comm'n of Md.*, 171 Md. App. 254, 266 (2006) ("[U]nless fettered by a Rule or statute, a court ordinarily may take any action *sua sponte* that it can take in response to a motion, including dismissal of an action."). But, absent fraud, irregularity or mistake, a court may not *sua sponte* revise a judgment thirty days after the judgment's enrollment. *Nechay*, 347 Md. at 409.

Here, Mother did not move to revise the custody order under either the statute or Rule at any time, let alone within thirty days. Further, the court did not properly exercise its revisory powers because it did not independently act within the same time frame. Nonetheless Mother argues *Higginbotham* and *Nechay* support her claim that the court could act outside the thirty-day window. Again, we disagree.

In *Higginbotham*, one of the two defendants filed a motion to dismiss Higginbotham's complaint. The court granted the defendant's motion, but *sua sponte* dismissed as to all defendants. 171 Md. App. at 263. On direct appeal, this Court held that a *sua sponte* dismissal action was appropriate because "the court referred to the motion to dismiss as having been submitted by both" defendants, and the "grounds for the dismissal applied to all named defendants." *Id.* at 266.

Nechay, a nurse, sought to enjoin the state nursing board from publishing a reprimand based her allegedly poor professional conduct. The nursing board moved to dismiss or for summary judgment, arguing that a public reprimand was the appropriate

19

legal sanction. *Nechay*, 347 Md. at 399-401. The circuit court denied the nursing board's motion and enjoined it from publishing the reprimand. *Id.* at 403. But before this hearing took place, Nechay filed an amended complaint for interlocutory relief. Within thirty days of the first order a "fast-tracked" trial on the amended complaint occurred before a different judge. The second judge concluded that the first order was not a final order and nothing at law forbade the nursing board from publishing the reprimand. *Id.* at 404.

On Nechay's appeal to us, we reversed in an unreported opinion. But the Supreme Court of Maryland granted certiorari to determine whether the second judge had jurisdiction to revise the judgment. *Id.* The Court explained that the second judge,

> was fully authorized to do what she did—she acted **within 30 days** of the entry of the [first judge's] order. And, whether intended as a modification or revision, or not, when that action results in the change of a prior order, it supercedes that order and, therefore, it does not matter on what theory that change occurred, so long as jurisdiction resided in the court effecting the change.

*Id.* at 412 (emphasis added). In coming to this conclusion, the Maryland Supreme Court emphasized that the court's power to revise a judgment within the **time prescribed by the rules** is "inherent." *Id.* at 409. (emphasis added).

Mother's reliance on these two cases is misplaced, as both are clearly distinguishable from the circumstances presented here. *First and most importantly*, neither *Higginbotham* nor *Nechay*, involved a final judgment, as we have in this case. *Second*, in *Higginbotham* the Supreme Court held that the circuit court's spontaneous act of dismissing all defendants during a lawsuit was in the interests of justice. We cannot draw the same conclusion in this instance because the court struck a custody order entered nearly

20

two years prior. The court's action deprived the parties of a viable two-year old custody determination when neither party asked the court to do so. *Third*, *Nechay* emphasized that the court's revisory powers under Rule 2-535(a) may only be exercised within a thirty-day window. As discussed, that did not happen here. Further, Mother cites no authority for a contrary view. *See Yarema,* 305 Md. at 241; *Platt v. Platt,* 302 Md. 9, 13 (1984). We now address whether the court properly struck the custody order under Rule 2-535(b), which permits a court to revise a judgment "at any time."

### c. There Was No "Irregularity" Under Rule 2-535(b) that Permitted the Circuit Court to Sua Sponte Vacate the Custody Order More Than Thirty Days After Its Entry

Under Rule 2-535(b) to revise a judgment beyond the thirty-day period, (1) a party must first move the court to revise the judgment and (2) there must be fraud, mistake, or irregularity. A court

> will only exercise its revisory powers if, in addition to a finding of . . . irregularity, the party moving to set aside the enrolled judgment has acted with ordinary diligence, in good faith, and has a meritorious defense or cause of action. *See J.T. Masonry v. Oxford,* 314 Md. 498, 506, 551 A.2d 869 (1989) and cases cited therein. Moreover, it is well established that there must be clear and convincing evidence of . . . irregularity before a movant is entitled to have a judgment vacated under Rule 2-535(b).

*Tandra S.*, 336 Md. at 314 (*superseded by statute on other grounds*) (emphasis omitted). "The intent of these rules is to prevent hardships which may result from a lack of notice and the corresponding lack of an opportunity to interpose defenses prior to enrollment of a judgment." *Alban Tractor Co. v. Williford*, 61 Md. App. 71, 77 (1984).

We start by noting the obvious. Neither party asked the court to exercise its revisory power under Rule 2-535(b). Mother's assertion, advanced at oral argument, that filing a

21

motion to modify custody was tantamount to filing a Rule 2-535 request, is unavailing as there is no appellate authority, Rule, or statute that supports that contention, and she cites none. She simply did not ask the court to revise the custody judgment under Rule 2-535.

No case that we have found directly addresses Mother's sub-contention: that *Nechay* suggests that a court may exercise its revisory powers of its own volition if it finds fraud, irregularity, or mistake in the judgment. *See Nechay*, 347 Md. at 409. Bolstering her claim, we note that the circuit court's ruling strongly implies that it vacated the judgment because of what it perceived as an "irregularity" under Rule 2-535(b).[4] At various points during the exceptions hearing, the court expressed its concern that a recording of the custody hearing did not exist. The court wanted to know what the magistrate decided at the custody hearing to determine what the court called a "baseline" from which to determine what was in the child's best interest. But the court did not specifically cite the lack of a recording or transcript of the custody hearing as an irregularity under Rule 2-535(b) as a basis on which it vacated the custody order.

On the one hand, such a determination—whether not having a record of the custody hearing is an irregularity—is unnecessary to resolve the second alleged error. As shall be discussed in detail in Section III of this opinion, the magistrate was not legally obligated to consider the child's best interests for a modification of custody because Mother could

---

[4]  Rule 16-503(a)(2) states that "proceedings before a magistrate shall be recorded verbatim in their entirety" unless waived.

not establish that a material change in circumstances had occurred.[5] We, however, will exercise our discretion under Rule 8-131(c) and address this specific issue for the first time and for trial court's guidance on remand.

The Supreme Court of Maryland stated that an "irregularity," as used in Rule 2-535(b), means "the doing or not doing of that, in the conduct of a suit at law, which, conformable to the practice of the court, ought or ought not to be done." *Early*, 338 Md. at 652. In other words, "an 'irregularity' is a failure to follow required process or procedure." *Id.*; *see also Maryland Lumber Co. v. Savoy Constr. Co., Inc.*, 286 Md. 98 (1979) (holding an irregularity existed because the court clerk failed to send required notice of default judgment to the defendant); *Early*, 338 Md. at 653 (holding an irregularity existed because the clerk failed to send copies of the court order to all the parties). This Court has additionally held that "the failure of an employee of the court or of the clerk's office to perform a duty required by statute or a Rule" constitutes an irregularity. *J.T. Masonry Co., Inc.*, 74 Md. App. at 607. Additionally, this Court has emphasized that irregularity "provides very narrow grounds for revising a final judgment under Rule 2-535(b)." *Das v.*

---

[5] Further, despite what the court said at the exceptions hearing, a recording of the custody hearing was not necessary to determine whether a material change in circumstances had occurred. The court noted in its October 13, 2023 order:

> WHEREAS, the Court is unable to determine whether there was a material change of circumstances between then-Magistrate Johnson's hearing on March 21, 2022 and the filing of the motion for modification on July 18, 2022 because there is no record of then-Magistrate Johnson's findings.

Both parties were present and could have testified about that issue. *See* Section III of this opinion.

23

*Das*, 133 Md. App. 1, 23 (2000); *see also Tandra S.*, 336 Md. at 318 (*superseded by statute on other grounds*) ("As a ground[] for revising an enrolled judgment, irregularity . . . has a very narrow scope.").

We take from these cases and others that the crux of an irregularity finding is "to prevent hardships which may result from a lack of notice and the corresponding lack of an opportunity to interpose defenses prior to enrollment of a judgment." *Alban*, 61 Md. App. at 77. Even if we were to determine that not having a recording of the custody proceedings is an irregularity,[6] Mother has not demonstrated hardship, lack of notice, or lack of opportunity to defend her case with regard to the custody order. Mother was properly served and notified about the custody hearing. She chose not to attend the hearing, appeal, or move to revise the custody order. More importantly, Mother has not shown how not having a recording of the hearing prejudiced her in any way. Her stated concern at the exceptions hearing and on appeal is that she was not able to tell the court about the circumstances that existed in Texas when she had custody of G.C. But the time to have presented that evidence was at the custody hearing. Even without a recording of that hearing, Mother has not overcome the presumption that the magistrate took testimony at the March 21, 2022 custody hearing, rendered findings and recommendations to the circuit court and, as in thousands of other custody determinations that have taken place within

---

[6] According to Father's reply brief, he has ordered the audio of the original custody hearing and is currently awaiting it. Father asserts the circuit court has not informed him that there is no audio from which a transcript can be prepared.

Maryland since then, the circuit court ratified those findings and entered a custody order. *See Bradley v. Hazard Tech. Co., Inc.*, 340 Md. 202 (1995).

As our Supreme Court has stated, "[w]e do not believe, therefore, that every inadvertent omission in the record would call for reversal or would justify the time and expense incident to a new trial." *Bradley*, 340 Md. at 208. The Court also emphasized that

> [i]t would wreak havoc on the administration of justice to require reversal in each and every case in which it is alleged by an appellant that portions of trial testimony have not been preserved verbatim for review. As anyone familiar with appellate review can attest, transcripts are seldom perfect. Mistakes inevitably occur . . . . Electronic recording or stenographic equipment will occasionally fail . . . . Understandably, therefore, it has been necessary for courts to proceed on a case-by-case basis.

*Smith v. State,* 291 Md. 125, 133-34 (1981); *see Michigan Nat. Bank v. Racine*, 234 Md. 250, 253 (1964) ("[T]he mere fact that the stenographer's notes were lost does not automatically call for a new trial."). We hold that the unavailability of a recording or transcript of a custody proceeding is not an irregularity under Rule 2-535(b).

For the foregoing reasons we conclude that the circuit court abused its discretion in *sua sponte* vacating the custody order. We agree with Father that the effect of the court's action was to deprive him of Due Process under the Fourteenth Amendment of the United States Constitution and Article 24 of the Maryland Declaration of Rights. *See Roberts v. Total Health Care, Inc.*, 349 Md. 499, 509 (1998) ("At the core of due process is the right to notice and a meaningful opportunity to be heard.").

**III. The Circuit Court Erred When it Granted Mother's Exceptions to the Magistrate's Recommendations.**

**A. Parties' Contentions**

Father contends the circuit court erred when it granted Mother's exceptions to the magistrate's findings. Specifically, Father argues the circuit court failed to follow established Maryland case law, which clearly articulates a two-step process when considering a request to modify custody. Preliminarily the court must determine whether a material change in circumstances has occurred, and if none is found, the analysis stops there. Father contends the magistrate correctly determined no material change in circumstances occurred, so a best interest analysis was not required. The circuit court erred because its reasoning for granting Mother's exceptions was because the magistrate failed to do the required best interest analysis.

Mother contends this issue is moot because the circuit court vacated the custody order. However, if not moot, Mother argues the circuit court did not abuse its discretion because the two steps for determining a motion to modify are intertwined, and to determine whether a material change in circumstances existed, a best interest of the child analysis is required.

**B. Analysis**

**a. Mootness**

As a preliminary matter, we address Mother's assertion that this issue is moot. In other words, the court struck the custody order and sent the parties back to the magistrate, essentially, for a "do-over" to determine custody. Therefore, Mother reasons, it doesn't

matter whether the court erred in sustaining her exceptions. The problem with this argument is that its viability hinges upon the circuit court properly vacating the custody order. As discussed, we hold the circuit court abused its discretion in vacating the custody order. Therefore, Father's argument is not moot, and we address the merits.

### b. Merits

Countless reported cases in Maryland stand for the following proposition: When presented with a request to modify custody, courts must engage in a two-step process. *Gillespie*, 206 Md. App. at 170. The two-step process is as follows: "First, the circuit court must assess whether there has been a 'material' change in circumstance." *Id.* (quoting *Wagner v. Wagner,* 109 Md. App. 1, 28 (1996)). Then, if a finding is made that there has been such a material change, the court proceeds to consider the best interests of the child as if the proceeding were one for original custody. *Id.*; *see also Braun v. Headley,* 131 Md. App. 588, 610 (2000); *see McCready v. McCready*, 323 Md. 476, (1991).

A material change of circumstances is "a change in circumstances that affects the welfare of the child." *Id.* at 171 (citing *McMahon v. Piazze,* 162 Md. App. 588, 594 (2005)). "The burden is then on the moving party to show that there has been a **material change in circumstances since the entry of the final custody order** and that it is now in the best interest of the child for custody to be changed." *Id.* at 171-72 (emphasis added) (quoting *Sigurdsson v. Nodeen,* 180 Md. App. 326, 344 (2008)).

We note that frequently the considerations that relate to a material change in circumstances might be applicable to determining best interests.

Certainly, the very factors that indicate that a material change in circumstances has occurred may also be extremely relevant at the second phase of the inquiry—that is, in reference to the best interest of the child. If not relevant to the best interest of the child, the changes would not be material in the first instance.

*Wagner*, 109 Md. App. at 28. Because of these sometimes-overlapping considerations, we also noted that,

this two-step process is sometimes considered concurrently, in one step, i.e., the change in circumstances evidence also satisfies—or does not—the determination of what is in the best interest of the child. Even if it alone does not satisfy the best interest standard, it almost certainly will afford evidentiary support in the resolution of the second step. Thus, both steps may be, and often are, resolved simultaneously.

*Id.* at 28-29.

But significantly, in our reading, *Wagner* does not remotely hold that the two-step process should be combined or that a best interests analysis trumps all other considerations when a court confronts a request to change custody. In fact, *Wagner* reiterates that: "[a] change of custody resolution is most often a chronological two-step process. First, unless a material change of circumstances is found to exist, the court's inquiry ceases." *Id.* at 28. If "either no change or the change itself does not relate to the child's welfare, **there can be no further consideration of the best interest of the child** because, unless there is a material change, there can be no consideration given to a modification of custody." *Id.* at 29. "The threshold—but not paramount—issue is the existence of a material change," and so "there can be no modification of custody unless a material change of circumstance is found to exist." *Id.*

In her written motion for modification, at point 10, Mother stated:

> [T]here has been a material change in circumstances which warrants a Modification to the Order:
>
> a. That the Minor Child is primarily residing with Plaintiff Father in Maryland
>
> b. That Defendant Mother has moved back to Maryland so that she can be with her Minor Child.

At the modification hearing Mother testified that she was intent on moving to Maryland but had not done so. The magistrate found that Mother's testimony revealed that she had not moved to Maryland and was not intent on moving because she had significant ties to Texas, which included her infant son.

After taking testimony from both Mother and Father and listening to the arguments of their counsel, in making his oral findings, the magistrate reviewed Mother's written motion to modify saying:

> In fact, there is no (indiscernible - 2:12:42) of any material change until you get to paragraph 10. And there are two allegations of material change that are listed. One was that the minor child is now living in Maryland. And the second is that the lady had moved back to Maryland so that she could be with the child.
>
> The first reason is not a material change. That's just the result of me (indiscernible - 2:13:22) custody order. Allegation that the lady had moved back to Maryland is at best the only allegation of a material change. And before we even started, and you know, the lady acknowledged that she clearly intends to relocate back to Texas with the child. So it puts into question whether the lady really has relocated to Maryland or not. Testimony does indicate she's traveled back and forth to Texas since coming to Maryland most recently. And in fact, based on -- it seems that her life is centered in Texas, and not in Maryland.

29

Ultimately, the magistrate determined that Mother had not shown a material change in circumstances and denied the motion to modify.[7]

Later, at the exceptions hearing, and before remanding the case back to the magistrate, the court expressed its concern that the magistrate failed to engage in a best interests analysis saying:

> my only concern about this magistrate's order is that at this juncture I don't understand -- if he didn't go through the Taylor factors, then how could he say that there has not been a material change in circumstances since we don't know what those circumstances were back in April 17 of 2022 because of the default? And so at the very least, that -- he should have heard testimony regarding what's in the interest of the -- . . . The magistrate should have heard evidence regarding what's in the best interest of the minor child.

Based on our review of appellate authority, we conclude the court erred when it ruled that the magistrate was required to undertake a best interest analysis to determine if a material change in circumstances existed. We reiterate: When faced with a request to modify custody the court must make a threshold determination whether a material change in circumstances has occurred since the entry of the custody order. Only if the court determines that a material change has occurred then the court must undertake a best interests analysis. *Gillespie*, 206 Md. App. at 170; *Wagner,* 109 Md. App. at 28.[8]

---

[7] Whether the magistrate granted Father's motion to dismiss the modification petition or denied Mother's request is immaterial to our analysis.

[8] This means that unless somehow relevant to a determination of whether a material change exists, considerations such as the reasons why a party was unable to attend the custody hearing or what the parties' circumstances were before the custody order are not at issue. This is not to say that such issues are unimportant. They are but should be raised at a hearing designed to address those concerns. For example, explaining why a party was unable to attend the custody hearing may be appropriate, for example, at a hearing on

### c. Res Judicata

Finally, one tangential issue. We also agree with Father that because the custody order was viable, the doctrine of *res judicata* prohibited Mother from litigating issues at the exceptions hearing concerning events that occurred before the custody order was enrolled. *See*, *generally*, *Alvey v. Alvey*, 225 Md. 386, 390 (1961) (stating that "the doctrine of res judicata is that a judgment between the same parties and their privies is a final bar to any other suit upon the same cause of action, and is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit").

Specifically in child custody cases we have held that "[t]he 'material change' standard ensures that principles of *res judicata* are not violated by requiring that such a showing must be made *any time* a party to a custody or visitation order wishes to make a contested change, even if it is to an arguably minor term." *McMahon*, 162 Md. App. at 596 (emphasis in original). "A litigious or disappointed parent must not be permitted to relitigate questions of custody endlessly upon the same facts, hoping to find a chancellor sympathetic to his or her claim." *McCready*, 323 Md. at 481. Here, the magistrate properly ruled that at the modification hearing, as the moving party, Mother's first task was to prove that a material change occurred after the entry of the custody order, rather than litigate issues that could have been resolved at the custody hearing.

---

motion to alter or amend, provided the reasons fit the requirements of Rule 2-534. The reasons for or against one party having custody should be raised at the custody hearing.

## CONCLUSION

For the reasons that we have discussed, we hold that the circuit court had no authority under any of Maryland's appellate decisions, statutes, or Rules to vacate the custody order in this case. The custody order was a final judgment to which Mother had not appealed or properly invited the court to exercise its revisory powers. Additionally, we hold the court erred in sustaining Mother's exceptions to the magistrate's findings. In a modification of custody hearing, the court is required to examine the best interests of the child only if the court first determines that a material change in circumstances has been proven, which was not the case here.

**THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY IS REVERSED. APPELLEE TO PAY THE COSTS.**